(Slip Opinion)          OCTOBER TERM, 2008          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## NIJHAWAN *v.* HOLDER, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 08–495.   Argued April 27, 2009—Decided June 15, 2009

An alien "convicted of an aggravated felony any time after admission is deportable." 8 U. S. C. §1227(a)(2)(A)(iii). An "aggravated felony" includes "an offense that . . . involves fraud or deceit in which the loss to the . . . victims exceeds $10,000." §1101(a)(43)(M)(i). Petitioner, an alien, was convicted of conspiring to commit mail fraud and related crimes. Because the relevant statutes did not require a finding of loss, the jury made no such finding. However, at sentencing, petitioner stipulated that the loss exceeded $100 million. He was sentenced to prison and required to make $683 million in restitution. The Government subsequently sought to remove him from the United States, claiming that he had been convicted of an "aggravated felony." The Immigration Judge found that petitioner's conviction fell within the "aggravated felony" definition. The Board of Immigration Appeals agreed, as did the Third Circuit, which held that the Immigration Judge could inquire into the underlying facts of a prior fraud conviction for purposes of determining whether the loss to the victims exceeded $10,000.

*Held:* Subparagraph (M)(i)'s $10,000 threshold refers to the particular circumstances in which an offender committed a fraud or deceit crime on a particular occasion rather than to an element of the fraud or deceit crime. Pp. 3–13.

   (a) Words such as "crime," "felony, and "offense" sometimes refer to a generic crime (a "categorical" interpretation), and sometimes refer to the specific acts in which an offender engaged ("circumstance-specific" interpretation). The basic argument favoring the "categorical" interpretation rests upon *Taylor* v. *United States*, 495 U. S. 575*, Chambers* v. *United States*, 555 U. S. ___*,* and *James* v. *United States*, 550 U. S. 192.   These cases concerned the Armed Career

Criminal Act (ACCA), which enhances the sentence for firearm-law offenders who have prior "violent felony" convictions, 18 U. S. C. §924(e). The Court held that the word "felony" refers to a generic crime as generally committed. Thus, for example, in *James*, the Court applied the "categorical method" to determine whether an "attempted burglary" was a "violent felony." That method required the Court to examine "not the unsuccessful burglary . . . attempted on a particular occasion, but the generic crime of attempted burglary." 550 U. S., at 204–206. Pp. 3–5.

   (b) Contrary to petitioner's arguments, the "$10,000 loss" provision at issue calls for a "circumstance-specific" interpretation, not a "categorical" one. The "aggravated felony" statute of which it is a part differs from ACCA in general, and the "$10,000 loss" provision differs specifically from ACCA's provisions. Pp. 6–10.

      (1) The "aggravated felony" statute at issue resembles ACCA when it lists several "offenses" in language that must refer to generic crimes. But other "offenses" are listed using language that almost certainly refers to specific circumstances. Title 8 U. S. C. §1101(a)(43)(P), for example, after referring to "an offense" that amounts to "falsely making, forging, counterfeiting, mutilating, or altering a passport," adds, "except in the case of a first offense for which . . . the alien committed the offense for the purpose of assisting . . . the alien's spouse, child, or parent . . . to violate a provision of this chapter." The language about "forging . . . passport[s]" may well refer to a generic crime, but the exception cannot possibly refer to a generic crime, because there is no criminal statute that contains any such exception. Subparagraph (M)(ii), which refers to an offense "described in [26 U. S. C. §7201] (relating to tax evasion) in which the revenue loss to the government exceeds $10,000," provides another example. Because no §7201 offense has a specific loss amount as an element, the tax-evasion provision would be pointless, unless the "revenue loss" language calls for circumstance-specific application. Here, the question is to which category subparagraph (M)(i) belongs. Pp. 6–8.

      (2) Subparagraph (M)(i)'s language is consistent with a circumstance-specific approach. The words "in which" (modifying "offense") can refer to the conduct involved "*in*" the commission of the offense of conviction, rather than to the elements *of* the offense. Moreover, subparagraph (M)(i) appears just prior to subparagraph (M)(ii), the tax-evasion provision, and their structures are identical. Where, as here, Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations. *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 34. Additionally, applying a categorical approach would leave subparagraph (M)(i) with little, if any, meaningful application. Only three federal fraud

statutes appear to contain a relevant monetary loss threshold. And at the time the $10,000 threshold was added, only eight States had fraud and deceit statutes in respect to which that threshold, as categorically interpreted, would have full effect. Congress is unlikely to have intended subparagraph (M)(i) to apply in such a limited and haphazard manner. Pp. 8–10.

(c) This Court rejects petitioner's alternative position that fairness calls for a "modified categorical approach" requiring a jury verdict or a judge-approved equivalent to embody a loss-amount determination, and permitting the subsequent immigration court applying subparagraph (M)(i) to examine only charging documents, jury instructions, and any special jury finding, or their equivalents. The Court's cases developed the evidentiary list to which petitioner points for a very different purpose, namely, to determine which statutory phrase (contained within a statutory provision covering several different generic crimes) covered a prior conviction. Additionally, petitioner's proposal can prove impractical insofar as it requires obtaining from a jury a special verdict on a fact that is not an element of the offense. Further, evidence of loss offered by the Government must meet a "clear and convincing" standard and the loss must be tied to the specific counts covered by the conviction. These considerations mean that petitioner and others in similar circumstances have at least one and possibly two opportunities to contest the loss amount, the first at the earlier sentencing and the second at the deportation hearing. There was nothing unfair about the Immigration Judge's reliance on earlier sentencing-related material here. The defendant's sentencing stipulation and the court's restitution order show that the conviction involved losses considerably greater than $10,000. Absent any conflicting evidence, this evidence is clear and convincing. Pp. 10–12.

523 F. 3d 387, affirmed.

BREYER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–495

MANOJ NIJHAWAN, PETITIONER *v.* ERIC H.
HOLDER, JR., ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[June 15, 2009]

JUSTICE BREYER delivered the opinion of the Court.

Federal immigration law provides that any "alien who is
convicted of an *aggravated felony* at any time after admis-
sion is deportable."  8 U. S. C. §1227(a)(2)(A)(iii) (emphasis
added).  A related statute defines "aggravated felony" in
terms of a set of listed offenses that includes "an offense
that . . . involves fraud or deceit *in which the loss to the
victim or victims exceeds $10,000.*"　§1101(a)(43)(M)(i)
(emphasis added).  See Appendix A.  The question before
us is whether the italicized language refers to an element
of the fraud or deceit "offense" as set forth in the particu-
lar fraud or deceit statute defining the offense of which the
alien was previously convicted.  If so, then in order to
determine whether a prior conviction is for the kind of
offense described, the immigration judge must look to the
criminal fraud or deceit statute to see whether it contains
a monetary threshold of $10,000 or more.  See *Taylor* v.
*United States*, 495 U. S. 575 (1990) (so interpreting the
Armed Career Criminal Act).  We conclude, however, that
the italicized language does not refer to an element of the
fraud or deceit crime.  Rather it refers to the particular

circumstances in which an offender committed a (more broadly defined) fraud or deceit crime on a particular occasion.

## I

Petitioner, an alien, immigrated to the United States in 1985. In 2002 he was indicted for conspiring to commit mail fraud, wire fraud, bank fraud, and money laundering. 18 U. S. C. §§371, 1341, 1343, 1344, 1956(h). A jury found him guilty. But because none of these statutes requires a finding of any particular amount of victim loss, the jury made no finding about the amount of the loss. At sentencing petitioner stipulated that the loss exceeded $100 million. The court then imposed a sentence of 41 months in prison and required restitution of $683 million.

In 2005 the Government, claiming that petitioner had been convicted of an "aggravated felony," sought to remove him from the United States. The Immigration Judge found that petitioner's conviction was for crimes of fraud and deceit; that the sentencing stipulation and restitution order showed that the victims' loss exceeded $10,000; and that petitioner's conviction consequently fell within the immigration statute's "aggravated felony" definition. See 8 U. S. C. §§1101(a)(43)(M)(i), (U) (including within the definition of "aggravated felony" any "attempt or conspiracy to commit" a listed "offense"). The Board of Immigration Appeals agreed. App. to Pet. for Cert. 44a–51a. So did the Third Circuit. 523 F. 3d 387 (2008). The Third Circuit noted that the statutes of conviction were silent as to amounts, but, in its view, the determination of loss amounts for "aggravated felony" purposes "requires an inquiry into the underlying facts of the case." *Id.*, at 396 (internal quotation marks omitted).

The Courts of Appeals have come to different conclusions as to whether the $10,000 threshold in subparagraph (M)(i) refers to an element of a fraud statute or to

the factual circumstances surrounding commission of the crime on a specific occasion. Compare *Conteh* v. *Gonzales*, 461 F. 3d 45, 55 (CA1 2006) (fact-based approach); 523 F. 3d 387 (same) (case below); *Arguelles-Olivares* v. *Mukasey*, 526 F. 3d 171, 178 (CA5 2008) (same), with *Dulal-Whiteway* v. *United States Dept. of Homeland Security*, 501 F. 3d 116, 131 (CA2 2007) (definitional approach); *Kawashima* v. *Mukasey*, 530 F. 3d 1111, 1117 (CA9 2008) (same); *Obasohan* v. *United States Atty. Gen.*, 479 F. 3d 785, 791 (CA11 2007) (same). We granted certiorari to decide the question.

## II

The interpretive difficulty before us reflects the linguistic fact that in ordinary speech words such as "crime," "felony, "offense," and the like sometimes refer to a generic crime, say, the crime of fraud or theft in general, and sometimes refer to the specific acts in which an offender engaged on a specific occasion, say, *the* fraud that the defendant planned and executed last month. See *Chambers* v. *United States*, 555 U. S. ___, ___ (2009) (slip op., at 3). The question here, as we have said, is whether the italicized statutory words "offense that involves fraud or deceit *in which the loss to the . . . victims exceeds $10,000*" should be interpreted in the first sense (which we shall call "categorical"), *i.e.*, as referring to a generic crime, or in the second sense (which we shall call "circumstance-specific"), as referring to the specific way in which an offender committed the crime on a specific occasion. If the first, we must look to the statute defining the offense to determine whether it has an appropriate monetary threshold; if the second, we must look to the facts and circumstances underlying an offender's conviction.

## A

The basic argument favoring the first—*i.e.*, the "generic"

or "categorical"—interpretation rests upon *Taylor, Chambers,* and *James* v. *United States*, 550 U. S. 192 (2007). Those cases concerned the Armed Career Criminal Act (ACCA), a statute that enhances the sentence imposed upon certain firearm-law offenders who also have three prior convictions for "a violent felony." 18 U. S. C. §924(e). See Appendix B, *infra.* ACCA defines "violent felony" to include, first, felonies with elements that involve the use of physical force against another; second, felonies that amount to "burglary, arson, or extortion" or that involve the use of explosives; and third, felonies that "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B).

In *Taylor* and *James* we held that ACCA's language read naturally uses the word "felony" to refer to a generic crime as *generally* committed. *Chambers*, *supra,* at ___ (slip op., at 3) (discussing *Taylor*, 495 U. S., at 602); *James*, *supra,* at 201–202. The Court noted that such an interpretation of the statute avoids "the practical difficulty of trying to ascertain" in a later proceeding, "perhaps from a paper record" containing only a citation (say, by number) to a statute and a guilty plea, "whether the [offender's] prior crime . . . did or did not involve," say, violence. *Chambers*, *supra,* at ___ (slip op., at 3).

Thus in *James,* referring to *Taylor,* we made clear that courts must use the "categorical method" to determine whether a conviction for "attempted burglary" was a conviction for a crime that, in ACCA's language, "involved conduct that presents a serious potential risk of physical injury to another." §924(e)(2)(B)(ii). That method required the court to "examine, not the unsuccessful burglary the defendant attempted on a particular occasion, but the generic crime of attempted burglary." *Chambers*, *supra,* at (slip op., at 3) (discussing *James*, *supra,* at 204–206).

We also noted that the categorical method is not always

easy to apply. That is because sometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately. And it can happen that some of these crimes involve violence while others do not. A single Massachusetts statute section entitled "Breaking and Entering at Night," for example, criminalizes breaking into a "building, ship, vessel or vehicle." Mass. Gen. Laws, ch. 266, §16 (West 2006). In such an instance, we have said, a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent, break-ins that this single five-word phrase describes (*e.g.,* breaking into a building rather than into a vessel), by examining "the indictment or information and jury instructions," *Taylor*, *supra,* at 602, or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or "some comparable judicial record" of the factual basis for the plea. *Shepard* v. *United States*, 544 U. S. 13, 26 (2005).

Petitioner argues that we should interpret the subsection of the "aggravated felony" statute before us as requiring use of this same "categorical" approach. He says that the statute's language, read naturally as in *Taylor,* refers to a generic kind of crime, not a crime as committed on a particular occasion. He adds that here, as in *Taylor*, such a reading avoids the practical difficulty of determining the nature of prior conduct from what may be a brief paper record, perhaps noting only a statutory section number and a guilty plea; or, if there is a more extensive record, combing through that record for evidence of underlying conduct. Also, the categorical approach, since it covers only criminal statutes with a relevant monetary threshold, not only provides assurance of a finding on the point, but also assures that the defendant had an opportunity to present evidence about the amount of loss.

## B

Despite petitioner's arguments, we conclude that the "fraud and deceit" provision before us calls for a "circumstance-specific," not a "categorical," interpretation. The "aggravated felony" statute of which it is a part differs in general from ACCA, the statute at issue in *Taylor*. And the "fraud and deceit" provision differs specifically from ACCA's provisions.

### 1

Consider, first, ACCA in general. That statute defines the "violent" felonies it covers to include "burglary, arson, or extortion" and "crime[s]" that have "as an element" the use or threatened use of force. 18 U. S. C. §§924(e)(2)(B)(i)–(ii). This language refers directly to generic crimes. The statute, however, contains other, more ambiguous language, covering "crime[s]" that "*involv[e] conduct* that presents a serious potential risk of physical injury to another." *Ibid.* (emphasis added). While this language poses greater interpretive difficulty, the Court held that it too refers to crimes as generically defined. *James*, *supra,* at 202.

Now compare the "aggravated felony" statute before us. 8 U. S. C. §1101(a)(43). We concede that it resembles ACCA in certain respects. The "aggravated felony" statute lists several of its "offenses" in language that must refer to generic crimes. Subparagraph (A), for example, lists "murder, rape, or sexual abuse of a minor." See, *e.g.*, *Estrada-Espinoza* v. *Mukasey*, 546 F. 3d 1147, 1152 (CA9 2008) (en banc) (applying the categorical approach to "sexual abuse"); *Singh* v. *Ashcroft*, 383 F. 3d 144, 164 (CA3 2004) (same); *Santos* v. *Gonzales*, 436 F. 3d 323, 324 (CA2 2005) *(per curiam)* (same). Subparagraph (B) lists "illicit trafficking in a controlled substance." See *Gousse* v. *Ashcroft*, 339 F. 3d 91, 95–96 (CA2 2003) (applying categorical approach); *Fernandez* v. *Mukasey*, 544 F. 3d 862,

871–872 (CA7 2008) (same); *Steele* v. *Blackman*, 236 F. 3d 130, 136 (CA3 2001) (same). And subparagraph (C) lists "illicit trafficking in firearms or destructive devices." Other sections refer specifically to an "offense described in" a particular section of the Federal Criminal Code. See, *e.g.*, subparagraphs (E), (H), (I), (J), (L).

More importantly, however, the "aggravated felony" statute differs from ACCA in that it lists certain other "offenses" using language that almost certainly does not refer to generic crimes but refers to specific circumstances. For example, subparagraph (P), after referring to "an offense" that amounts to "falsely making, forging, counterfeiting, mutilating, or altering a passport," adds, "*except in the case of a first offense for which the alien . . . committed the offense for the purpose of assisting . . . the alien's spouse, child, or parent . . . to violate a provision of this chapter*" (emphasis added). The language about (for example) "forging . . . passport[s]" may well refer to a generic crime, but the italicized exception cannot possibly refer to a generic crime. That is because there is no such generic crime; there is no criminal statute that contains any such exception. Thus if the provision is to have any meaning at all, the exception must refer to the particular circumstances in which an offender committed the crime on a particular occasion. See also subparagraph (N) (similar exception).

The statute has other provisions that contain qualifying language that certainly seems to call for circumstance-specific application. Subparagraph (K)(ii), for example, lists "offense[s] . . . described in section 2421, 2422, or 2423 of title 18 (relating to transportation for the purpose of prostitution) *if committed for commercial advantage*" (emphasis added). Of the three specifically listed criminal statutory sections only one subsection (namely, §2423(d)) says anything about *commercial advantage*. Thus, unless the "commercial advantage" language calls for circum-

stance-specific application, the statute's explicit references to §§2421 and 2422 would be pointless. But see *Gertsen-shteyn* v. *United States Dept. of Justice*, 544 F. 3d 137, 144–145 (CA2 2008).

Subparagraph (M)(ii) provides yet another example. It refers to an offense "described in section 7201 of title 26 (relating to tax evasion) *in which the revenue loss to the Government exceeds $10,000*" (emphasis added). There is no offense "described in section 7201 of title 26" that has a specific loss amount as an element. Again, unless the "revenue loss" language calls for circumstance-specific application, the tax-evasion provision would be pointless.

The upshot is that the "aggravated felony" statute, unlike ACCA, contains some language that refers to generic crimes and some language that almost certainly refers to the specific circumstances in which a crime was committed. The question before us then is to which category subparagraph (M)(i) belongs.

2

Subparagraph (M)(i) refers to "an offense that . . . involves fraud or deceit *in which the loss to the victim or victims exceeds $10,000*" (emphasis added). The language of the provision is consistent with a circumstance-specific approach. The words "in which" (which modify "offense") can refer to the conduct involved "*in*" the commission of the offense of conviction, rather than to the elements *of* the offense. Moreover, subparagraph (M)(i) appears just prior to subparagraph (M)(ii), the internal revenue provision we have just discussed, and it is identical in structure to that provision. Where, as here, Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations. *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 34 (2005).

Moreover, to apply a categorical approach here would leave subparagraph (M)(i) with little, if any, meaningful

application. We have found no widely applicable federal fraud statute that contains a relevant monetary loss threshold. See, *e.g.*, 18 U. S. C. §§1341 (mail fraud), 1343 (wire fraud), 1344 (bank fraud), 371 (conspiracy to defraud the United States), 666 (theft in federally funded programs), 1028 (fraud in connection with identification documents), 1029 (fraud in connection with access devices), 1030 (fraud in connection with computers), 1347 (health care fraud), and 1348 (securities fraud). Petitioner has found only three federal fraud statutes that do so, and those three contain thresholds not of $10,000, but of $100,000 or $1 million, §§668 (theft by fraud of an artwork worth $100,000 or more), 1031(a) (contract fraud against the United States where the contract is worth at least $1 million), and 1039(d) (providing enhanced penalties for fraud in obtaining telephone records, where the scheme involves more than $100,000). Why would Congress intend subparagraph (M)(i) to apply to only these three federal statutes, and then choose a monetary threshold that, on its face, would apply to other, nonexistent statutes as well?

We recognize, as petitioner argues, that Congress might have intended subparagraph (M)(i) to apply almost exclusively to those who violate certain state fraud and deceit statutes. So we have examined state law. See Appendix C, *infra*. We have found, however, that in 1996, when Congress added the $10,000 threshold in subparagraph (M)(i), see Illegal Immigration Reform and Immigrant Responsibility Act §321(a)(7), 110 Stat. 3009–628, 29 States had no major fraud or deceit statute with any relevant monetary threshold. In 13 of the remaining 21 States, fraud and deceit statutes contain relevant monetary thresholds but with amounts significantly higher than $10,000, leaving only 8 States with statutes in respect to which subparagraph (M)(i)'s $10,000 threshold, as categorically interpreted, would have full effect. We do

not believe Congress would have intended (M)(i) to apply in so limited and so haphazard a manner. Cf. *United States* v. *Hayes*, 555 U. S. ___, ___ (2009) (slip op., at 10–11) (reaching similar conclusion for similar reason in respect to a statute referring to crimes involving "domestic violence").

Petitioner next points to 8 U. S. C. §1326, which criminalizes illegal entry after removal and imposes a higher maximum sentence when an alien's removal was "subsequent to a conviction for commission of an aggravated felony." §1326(b)(2). Petitioner says that a circumstance-specific approach to subparagraph (M)(i) could create potential constitutional problems in a subsequent criminal prosecution under that statute, because loss amount would not have been found beyond a reasonable doubt in the prior criminal proceeding. The Government, however, stated in its brief and at oral argument that the later jury, during the illegal reentry trial, would have to find loss amount beyond a reasonable doubt, Brief for Respondent 49–50; Tr. of Oral Arg. 39–40, eliminating any constitutional concern. Cf. *Hayes*, *supra,* at ___ (slip op., at 10).

We conclude that Congress did not intend subparagraph (M)(i)'s monetary threshold to be applied categorically, *i.e.*, to only those fraud and deceit crimes generically defined to include that threshold. Rather, the monetary threshold applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion.

## III

Petitioner, as an alternative argument, says that we should nonetheless borrow from *Taylor* what that case called a "modified categorical approach." He says that, for reasons of fairness, we should insist that a jury verdict, or a judge-approved equivalent, embody a determination that the loss involved in a prior fraud or deceit conviction

amounted to at least $10,000.  To determine whether that is so, petitioner says, the subsequent immigration court applying subparagraph (M)(i) should examine only charg- ing documents,  jury instructions, and any special jury finding (if one has been requested).  If there was a trial but no jury, the subsequent court should examine the equivalent judge-made findings.  If there was a guilty plea (and no trial), the subsequent court should examine the written plea documents or the plea colloquy.  To authorize any broader examination of the prior proceedings, peti- tioner says, would impose an unreasonable administrative burden on immigration judges and would unfairly permit him to be deported on the basis of circumstances that were not before *judicially determined* to have been present and which he may not have had an opportunity, prior to con- viction, to  dispute.

We agree with petitioner that the statute foresees the use of fundamentally fair procedures, including proce- dures that give an alien a fair opportunity to dispute a Government claim that a prior conviction involved a fraud with the relevant loss to victims.  But we do not agree that fairness requires the evidentiary limitations he proposes.

For one thing, we have found nothing in prior law that so limits the immigration court.  *Taylor*, *James*, and *Shepard*, the cases that developed the evidentiary list to which petitioner points, developed that list for a very different purpose, namely that of determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction.  See *supra*, at 5; *Taylor*, 495 U. S., at 602; *Shepard*, 544 U. S., at 26.  For another, petitioner's pro- posal itself can prove impractical insofar as it requires obtaining from a jury a special verdict on a fact that (given our Part II determination) is not an element of the offense.

Further, a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim

"beyond a reasonable doubt." At the same time the evidence that the Government offers must meet a "clear and convincing" standard. 8 U. S. C. §1229a(c)(3)(A). And, as the Government points out, the "loss" must "be tied to the specific counts covered by the conviction." Brief for Respondent 44; see, *e.g.*, *Alaka* v. *Attorney General of United States*, 456 F. 3d 88, 107 (CA3 2006) (loss amount must be tethered to offense of conviction; amount cannot be based on acquitted or dismissed counts or general conduct); *Knutsen* v. *Gonzales*, 429 F. 3d 733, 739–740 (CA7 2005) (same). And the Government adds that the "sole purpose" of the "aggravated felony" inquiry "is to ascertain the nature of a prior conviction; it is not an invitation to relitigate the conviction itself." Brief for Respondent 44 (internal quotation marks omitted). Finally, the Board of Immigration Appeals, too, has recognized that immigration judges must assess findings made at sentencing "with an eye to what losses are covered and to the burden of proof employed." *In re Babaisakov*, 24 I. & N. Dec. 306, 319 (2007).

These considerations, taken together, mean that petitioner and those in similar circumstances have at least one and possibly two opportunities to contest the amount of loss, the first at the earlier sentencing and the second at the deportation hearing itself. They also mean that, since the Government must show the amount of loss by clear and convincing evidence, uncertainties caused by the passage of time are likely to count in the alien's favor.

We can find nothing unfair about the immigration judge's having here relied upon earlier sentencing-related material. The defendant's own stipulation, produced for sentencing purposes, shows that the conviction involved losses considerably greater than $10,000. The court's restitution order shows the same. In the absence of any conflicting evidence (and petitioner mentions none), this evidence is clear and convincing.

The Court of Appeals concluded that petitioner's prior federal conviction consequently falls within the scope of subparagraph (M)(i).  And we affirm its judgment.

*It is so ordered.*

APPENDIXES
A

Section 101(a)(43) of the Immigration and Nationality Act, as set forth in 8 U. S. C. 1101(a)(43), provides:

"The term 'aggravated felony' means—

"(A)  murder, rape, or sexual abuse of a minor;

"(B)  illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18);

"(C)  illicit trafficking in firearms or destructive devices (as defined in section 921 of title 18) or in explosive materials (as defined in section 841(c) of that title);

"(D)  an offense described in section 1956 of title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000;

"(E)  an offense described in—

  "(i)  section 842(h) or (i) of title 18, or section 844(d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses);

  "(ii)  section 922(g)(1), (2), (3), (4), or (5), (j), (n), (*o*), (p), or (r) or 924(b) or (h) of title 18 (relating to firearms offenses); or

  "(iii)  section 5861 of title 26 (relating to firearms offenses);

"(F)  a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment at least one year;

"(G)  a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year;

"(H)  an offense described in section 875, 876, 877, or 1202 of title 18 (relating to the demand for or receipt of ransom);

"(I) an offense described in section 2251, 2251A, or 2252 of title 18 (relating to child pornography);

"(J) an offense described in section 1962 of title 18 (relating to racketeer influenced corrupt organizations), or an offense described in section 1084 (if it is a second or subsequent offense) or 1955 of that title (relating to gambling offenses), for which a sentence of one year imprisonment or more may be imposed;

"(K) an offense that—

"(i) relates to the owning, controlling, managing, or supervising of a prostitution business;

"(ii) is described in section 2421, 2422, or 2423 of title 18 (relating to transportation for the purpose of prostitution) if committed for commercial advantage; or

"(iii) is described in any of sections 1581–1585 or 1588–1591 of title 18 (relating to peonage, slavery, involuntary servitude, and trafficking in persons);

"(L) an offense described in—

"(i) section 793 (relating to gathering or transmitting national defense information), 798 (relating to disclosure of classified information), 2153 (relating to sabotage) or 2381 or 2382 (relating to treason) of title 18;

"(ii) section 421 of title 50 (relating to protecting the identity of undercover intelligence agents); or

"(iii) section 421 of title 50 (relating to protecting the identity of undercover agents);

"(M) an offense that—

"(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or

"(ii) is described in section 7201 of title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000;

"(N) an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense

for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter

"(O) an offense described in section 1325(a) or 1326 of this title committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph;

"(P) an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of section 1543 of title 18 or is described in section 1546(a) of such title (relating to document fraud) and (ii) for which the term of imprisonment is at least 12 months, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter;

"(Q) an offense relating to a failure to appear by a defendant for service of sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more;

"(R) an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year;

"(S) an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year;

"(T) an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed; and

"(U) an attempt or conspiracy to commit an offense described in this paragraph.

"The term applies to an offense described in this paragraph whether in violation of Federal or State law and

applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996." (Footnotes omitted.)

## B

Armed Career Criminal Act, 18 U. S. C. 924(e), provides:

"(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

"(2) As used in this subsection—

"(A) the term 'serious drug offense' means—

"(i) an offense under the Controlled Substances Act (21 U. S. C. 801 et seq.), the Controlled Substances Import and Export Act (21 U. S. C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

"(ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U. S. C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

"(B) the term 'violent felony' means any crime pun-

ishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

"(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

"(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

"(C) the term 'conviction' includes a finding that a person has committed an act of juvenile delinquency involving a violent felony."

C

We examined state statutes involving fraud or deceit in effect in 1996, when Congress added the $10,000 threshold in subparagraph (M)(i). See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, §321(a)(7), 110 Stat. 3009–628. While perhaps questions could be raised about whether certain of the statutes listed below involve "fraud or deceit" as required by subparagraph (M)(i), we give petitioner the benefit of any doubt and treat the statute as relevant.

1

In 29 States plus the District of Columbia, the main statutes in effect in 1996 involving fraud and deceit either did not have any monetary threshold or set a threshold lower than $10,000 even for the most serious grade of the offense. *Alabama:* see, *e.g.*, Ala. Code §§13A–8–2, 13A–8–3, 13A–9–14, 13A–9–14.1, 13A–9–46, 13A–9–47, 13A–9–73 (1996). *Arkansas:* see, *e.g.*, Ark. Code Ann. §§5–36–103, 5–37–203, 5–37–204, 5–37–207, 5–37–211 (1996).

Appendix C to opinion of the Court

*California:* see, *e.g.*, Cal. Penal Code Ann. §§484, 487, 502.7 (West 1996). *District of Columbia:* see, *e.g.*, D. C. Code §§22–3821, 22–3823 (1996). *Georgia:* see, *e.g.*, Ga. Code Ann. §§16–8–3, 16–8–12, 16–9–33 (1996). *Idaho:* see, *e.g.*, Idaho Code §§18–2403, 18–2407 (Lexis 1996). *Kentucky:* see, *e.g.*, Ky. Rev. Stat. Ann. §514.040 (West 1996). *Louisiana:* see, *e.g.*, La. Stat. Ann. §§14:67, 14:67.11, 14:70.1, 14:70.4, 14:71, 14:71.1 (West 1996). *Maryland:* see, *e.g.*, Md. Ann. Code, Art. 27, §§340, 342, 145, 230A, 230C, 230D (Lexis 1996). *Massachusetts:* see, *e.g.*, Mass. Gen. Laws, ch. 266, §§30, 37C (West 1996). *Michigan:* see, *e.g.*, Mich. Comp. Laws §§750.218, 750.271, 750.280, 750.219a, 750.356c (West 1996). *Mississippi:* see, *e.g.*, Miss. Code Ann. §§97–19–21, 97–19–35, 97–19–39, 97–19–71, 97–19–83 (1996). *Missouri:* see, *e.g.*, Mo. Rev. Stat. §§570.030, 570.120, 570.130, 570.180 (1996). *Montana:* Mont. Code Ann. §§45–6–301, 45–6–313, 45–6–315, 45–6–317 (1996). *Nebraska:* see, *e.g.*, Neb. Rev. Stat. Ann. §§28–512, 28–518, 28–631 (1996). *Nevada:* see, *e.g.*, Nev. Rev. Stat. §§205.0832, 205.0835, 205.370, 205.380 (1996). *New Hampshire:* see, *e.g.*, N. H. Rev. Stat. Ann. §§637:4, 637:11, 638:5, 638:20 (1996). *North Carolina:* see, *e.g.*, N. C. Gen. Stat. Ann. §§14–100, 14–106, 14–113.13 (1996). *Oklahoma:* see, *e.g.*, Okla. Stat., Tit. 21, §§1451, 1462, 1541.1, 1541.2, 1541.3, 1541.4, 1550.2, 1662, 1663 (West 1996). *Pennsylvania:* see, *e.g.*, 18 Pa. Cons. Stat. §§3903, 3922, 4110, 4111, 4117 (1996); but see §4105 (bad check statute amended 1996 to introduce $75,000 threshold). *Rhode Island:* see, *e.g.*, R. I. Gen. Laws §§11–18–6, 11–18–7, 11–18–8, 11–18–9, 11–41–4, 11–41–5, 11–41–29, 11–41–30 (1996). *South Carolina:* see, *e.g.*, S. C. Code Ann. §16–13–240 (1996). *South Dakota:* see, *e.g.*, S. D. Codified Laws §§22–30A–3, 22–30A–10, 22–30A–17 (1996). *Utah:* see, *e.g.*, Utah Code Ann. §§76–6–405, 76–6–412, 76–6–521, 76–10–1801 (Lexis 1996). *Vermont:* see, *e.g.*, Vt. Stat. Ann., Tit. 13, §§2001, 2002, 2024, 2531, 2582 (1996).

*Virginia:* see, *e.g.*, Va. Code Ann. §§18.2–178, 18.2–95, 18.2–195 (Lexis 1996). *Washington:* see, *e.g.*, Wash. Rev. Code §§9A.56.020, 9A.56.030 (1996). *West Virginia:* see, *e.g.*, W. Va. Code Ann. §61–3–24 (Lexis 1996). *Wisconsin:* see, *e.g.*, Wis. Stat. §§943.20, 943.395, 943.41 (1996). *Wyoming:* see, *e.g.*, Wyo. Stat. Ann. §§6–3–407, 6–3–607, 6–3–802 (1996).

2

In 13 States, conviction under the main fraud and deceit statutes in effect in 1996 could categorically qualify under subparagraph (M)(i). But the relevant monetary thresholds for these offenses—that is, the thresholds such that conviction categorically would satisfy the monetary requirement of subparagraph (M)(i)—were significantly higher than $10,000. Additionally, a number of these States had statutes targeted at particular kinds of fraud without any relevant monetary threshold. *Alaska:* see, *e.g.*, Alaska Stat. §§11.46.120, 11.46.180 (1996) ($25,000); but see, *e.g.*, §11.46.285 (fraudulent use of a credit card, no relevant monetary threshold). *Arizona:* see, *e.g.*, Ariz. Rev. Stat. Ann. §§13–1802 (West 1989), 13–2109 (West 2000) ($25,000); but see, *e.g.*, §§13–2103 (receipt of anything of value by fraudulent use of a credit card), 13–2204 (defrauding secured creditors), 13–2205 (defrauding judgment creditors), 13–2206 (West 1989) (fraud in insolvency), all with no relevant monetary threshold. *Colorado:* see, *e.g.*, Colo. Rev. Stat. Ann. §18–4–401 (Supp. 1996) ($15,000), but see, *e.g.*, §§18–5–205 (fraud by check), 18–5–207 (1986) (purchase on credit to defraud), both with no relevant monetary threshold. *Delaware:* see, *e.g.*, Del. Code Ann., Tit. 11, §§841, 843 (1995) ($50,000); but see, *e.g.*, §§903 (unlawful use of credit card), 913 (insurance fraud), 916 (home improvement fraud), all with no relevant monetary threshold. *Hawaii:* see, *e.g.*, Haw. Rev. Stat. §§708–830, 708–830.5 (Lexis 1994) ($20,000); but

see, *e.g.*, §§708–873 (defrauding secured creditors), 708–
8100 (fraudulent use of a credit card), 708–8100.5 (fraudu-
lent encoding of a credit card), 708–8103 (credit card fraud
by a provider of goods or services), all with no relevant
monetary threshold. *Indiana:* see, *e.g.*, Ind. Code §§35–
43–4–1 (West 1993), 35–43–4–2 ($100,000), 35–43–5–7.1
(West Supp. 1996) ($50,000); but see, *e.g.*, §§35–43–5–3
(deception), 35–43–5–4 (West 1993) (insurance and credit
card fraud), 35–43–5–7 (welfare fraud), 35–43–5–8 (fraud
on financial institutions), all with no relevant monetary
threshold. *Kansas:* see, *e.g.*, Kan. Stat. Ann. §§21–3701
(1995), 21–3707 (Supp. 1996), 21–3729 (1995), 21–3846
(Supp. 1996) ($25,000). *Minnesota:* see, *e.g.*, Minn. Stat.
§609.52 (1996) ($35,000). *New Jersey:* see, *e.g.*, N. J. Stat.
Ann. §§2C:20–2, 2C:20–4, 2C:21–13, 2C:21–17 (West 1995)
($75,000); but see, *e.g.*, §§2C:21–6 (credit cards), 2C:21–12
(defrauding secured creditors), both without a relevant
monetary threshold. *New Mexico:* see, *e.g.*, N. M. Stat.
Ann. §§30–16–6, 30–33–13, 30–44–7, 30–50–4 (1996)
($20,000); but see, *e.g.*, §30–16–33 (credit card fraud, no
relevant monetary threshold). *New York:* see, *e.g.*, N. Y.
Penal Law Ann. §§155.05 (West 1988), 155.40, 158.20
(West Supp. 1998), 176.25 ($50,000); but see, *e.g.,* §§190.65
(scheme to defraud), 185.00 (fraud in insolvency), 185.05
(fraud involving security interest), all with no relevant
monetary threshold. *Ohio:* see, *e.g.*, Ohio Rev. Code Ann.
§§2913.02, 2913.11, 2913.21, 2913.40, 2913.45, 2913.47,
2913.48 (Lexis 1996) ($100,000). *Texas:* see, *e.g.*, Tex.
Penal Code Ann. §§31.02 (West 1994), 31.03, 35.02 (West
Supp. 2003) ($20,000); but see, *e.g.*, §32.31 (credit card or
debit card abuse, no relevant monetary threshold).

3

In eight States, the main fraud and deceit statutes in
effect in 1996 had relevant monetary thresholds of
$10,000. However, a number of these States also had

statutes targeted at particular kinds of fraud without any relevant monetary threshold. *Connecticut:* see, *e.g.*, Conn. Gen. Stat. §§53a–119, 53a–122 (1996); but see, *e.g.*, §§53a– 128c, 53a–128i (credit card crimes, no relevant monetary threshold). *Florida:* see, *e.g.*, Fla. Stat. §§812.012, 812.014 (1996); but see, *e.g.*, §§817.234 (insurance fraud), 817.61 (fraudulent use of credit cards) (1996), both without a relevant monetary threshold. *Illinois:* see, *e.g.*, Ill. Comp. Stat., ch. 720, §5/16–1 (West 1996); but see, *e.g.*, §§5/17–6 (state benefits fraud), 5/17–9 (public aid wire fraud), 5/17– 10 (public aid mail fraud), 5/17–13 (fraudulent land sales), all without a relevant monetary threshold. *Iowa:* see, *e.g.*, Iowa Code §§714.1, 714.2, 714.8, 714.9 (1996). *Maine:* see, *e.g.*, Me. Rev. Stat. Ann., Tit. 17A, §§354, 362 (1996); but see, *e.g.*, §§902 (defrauding a creditor), 908 (home repair fraud), both without relevant monetary thresholds. *North Dakota:* see, *e.g.*, N. D. Cent. Code Ann. §§12.1–23–02, 12.1–23–05 (1996). *Oregon:* see, *e.g.*, Ore. Rev. Stat. §§164.085, 164.057; but see, *e.g.*, §§165.055 (fraudulent use of a credit card), 165.692, 165.990 (false claims for health care payments), both without a relevant monetary threshold. *Tennessee:* see, *e.g.*, Tenn. Code Ann. §39–14– 101, 39–14–105, 39–14–118, 39–14–133 (1996).