NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-4114

ROBERTO MUNEZ-MORALES,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

On Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A045-553-116)

Argued March 9, 2010

Before: AMBRO, SMITH and MICHEL,[*] Circuit Judges

(Opinion filed:   May 11, 2010)

Steven A. Morley, Esq. **[ARGUED]**
Morley, Surin & Griffin
325 Chestnut Street
Suite 1305-P
Philadelphia, PA
    *Counsel for Petitioner*

---

  [*] The Honorable Paul R. Michel, Chief Circuit Judge, United States Court of Appeals
for the Federal Circuit, sitting by designation.

Paul F. Stone, Esq.
Lyle D. Jentzer, Esq. **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation, Civil Div.
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent*

─────────────

OPINION

─────────────

MICHEL, <u>Circuit Judge</u>

Roberto Munez-Morales pled guilty to a criminal information charging him with taking part in a criminal conspiracy under 18 U.S.C. § 1956(h) involving money laundering and transporting, harboring, and concealing undocumented aliens. Subsequently, an Immigration Judge held that this conviction constituted an aggravated felony as defined at 8 U.S.C. § 1101(a)(43)(D),[1] rendering Munez-Morales subject to removal from the United States, and the Board dismissed Munez-Morales's appeal from the Immigration Judge's order of removal. Section 1101(a)(43)(D) defines aggravated felonies to include offenses under 18 U.S.C. § 1956 in which the amount of funds

───────────────

[1] 8 U.S.C. § 1101(a)(43)(D) provides in relevant part that "[t]he term 'aggravated felony' means . . . an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) . . . if the amount of the funds exceeded $10,000."

2

involved in the crime exceeds $10,000.  Munez-Morales petitions for review of the

Board's dismissal of his appeal from the Immigration Judge's order of removal,

contending that there was insufficient evidence for the Board and the Immigration Judge

to find that the funds involved in the criminal conspiracy to which Munez-Morales pled

guilty exceeded $10,000.  We will deny the petition for review.[2]

I.

Roberto Munez-Morales was admitted to the United States on June 26, 1996, as a

lawful permanent resident.  He settled in Martinsburg, West Virginia, where he currently

resides with his wife and his child, who is a United States citizen.  In and around

Martinsburg, Munez-Morales and other members of his extended family operate family-

style restaurants.

On August 20, 2003, Munez-Morales signed a guilty plea agreement in the

Southern District of West Virginia in which he consented to the filing of a one-count

criminal information charging him with conspiracy to engage in money laundering in

violation of 18 U.S.C. § 1956(h).  Neither the information nor the plea agreement stated

the amount of money laundered by the conspiracy.  According to the information and plea

agreement, the money-laundering conspiracy operated approximately from January 1999

to April 2003 and involved laundering funds in furtherance of the underlying criminal

---

[2]  The Board of Immigration Appeals had jurisdiction under 8 C.F.R. § 1003.1(b)(3).
We have jurisdiction to rule on Munez-Morales's petition for review under 8 U.S.C.
§ 1252.

activity of transporting, harboring, and concealing the undocumented aliens who worked in the restaurants operated by Munez-Morales's extended family.

On October 16, 2003, the United States District Court for the Southern District of West Virginia held a plea hearing, at which the government discussed what it would be able to prove should the case be tried on its merits. The government averred that it would be able to prove that the conspiracy involved restaurants co-owned by Munez-Morales and his brother, Alvaro Munoz (as well as additional restaurants owned by Munoz and other members of his extended family); that the conspiracy was spearheaded by Munoz; that the conspirators knowingly employed undocumented aliens and underpaid them; that the conspirators used the underpayments to under-report their profits and to create fictitious payroll checks to the undocumented alien employees, creating cash proceeds; that Munez-Morales provided his cash proceeds to Munoz; that Munoz wired the money he obtained from Munez-Morales and the other conspirators to Arizona to pay "coyotes" to illegally bring undocumented aliens into the United States; that the conspirators employed the undocumented aliens brought to the United States in their restaurants; and that Munez-Morales knew that the cash he gave to Munoz was going to pay the "coyotes" who were bringing the undocumented aliens across the border. The government did not state at this time how much money had been laundered by the conspiracy. Munez-Morales told the District Judge that he understood and agreed with this recitation of facts. The District Judge therefore accepted Munez-Morales's plea and convicted him of

4

violating 18 U.S.C. § 1956(h).

A pre-sentencing report was prepared and filed with the District Court; in addition to the facts recited above, it contained the following additional statements. The report stated that the undocumented aliens employed by the conspirators were paid three dollars per hour with no benefits, that they were required to work eighty hours per week, and that the restaurants owned and operated by the conspirators kept all gratuities intended for the employees. The report stated that Munez-Morales admitted that he employed two undocumented aliens in his restaurant for three years. The report also stated that the United States estimated the conspirators laundered $400,000 to $1,000,000 and that the guideline range for a fine that could be imposed on Munez-Morales was $2,000 to $2,000,000. Munez-Morales's attorney asked for and received an addendum to the draft pre-sentencing report making clear that Munez-Morales's sentence should take account of his relatively minor role in the conspiracy, given that he managed only a single restaurant while other members of the conspiracy managed two or more restaurants each, and given that Munez-Morales relied on his brothers to tell him how to carry out the illegal actions of the conspiracy.

On January 15, 2004, Munez-Morales appeared at a sentencing hearing. His attorney advised the court that he had reviewed the pre-sentencing report with Munez-Morales and that Munez-Morales understood the report and had no objections. The sentencing judge found sufficient indicia of reliability to support the probable accuracy of

the pre-sentencing report and its addendum, and the court therefore adopted the report and its addendum. After advising Munez-Morales that he could be sentenced to up to 20 years' imprisonment and assessed a fine up to $2,000,000, the sentencing judge imposed a sentence of six months' imprisonment, three years of supervised release, and no fine.

On March 31, 2004, the Department of Homeland Security charged Munez-Morales with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. According to the notice given to Munez-Morales, the crime to which he had pled guilty was properly considered an aggravated felony under 8 U.S.C. § 1101(a)(43)(D), because the amount of funds involved in the money-laundering scheme exceeded $10,000.

The Immigration Judge terminated removal proceedings on May 25, 2004, holding that the government had failed to prove that the amount of funds involved exceeded $10,000. On the first remand from the Board, the Immigration Judge again held that the government had failed to prove that sufficient funds were involved in the money-laundering conspiracy, so Munez-Morales was not removable.

The government again appealed to the Board, which reversed the Immigration Judge on June 26, 2007. The Board held that 8 U.S.C. § 1101(a)(43)(D), which provides that aggravated felonies include criminal convictions under 18 U.S.C. § 1956 in which the amount of funds involved in the criminal activity exceeds $10,000, should not be read as including only those crimes defined in 18 U.S.C. § 1956 that have the $10,000 amount as

6

an element of the offense. Instead, the Board held that 8 U.S.C. § 1101(a)(43)(D) invited investigation into the facts underlying a conviction under 18 U.S.C. § 1956 to determine whether the amount of funds involved actually exceeded $10,000. In addition, the Board held that there was sufficient evidence to find that Munez-Morales's conviction was for a criminal conspiracy that laundered more than $10,000. First, the Board noted that the pre-sentencing report estimated the amount of laundered funds as between $400,000 and $1,000,000. Second, the Board explained that the sentencing court had expressly adopted the findings of the pre-sentencing report and that Munez-Morales had made no objection to those findings. Third, the Board noted that the sentencing court had calculated Munez-Morales's guideline fine range as including a fine up to $2,000,000, which, thanks to the provision of 18 U.S.C. § 1956(a)(1) setting a maximum fine of "twice the value of the property involved in the transaction," indicated that the sentencing court must necessarily have found that the conspiracy laundered $1,000,000. Under our decision in *Alaka v. Attorney General*, 456 F.3d 88,106 (3d Cir. 2006), the Board held that these "explicit factual findings" should have been considered by the Immigration Judge and that, had they been so considered, the Immigration Judge would have been required to hold that Munez-Morales's conviction was for an aggravated felony under 8 U.S.C. § 1101(a)(43)(D). The Board therefore reinstated the removal proceedings, sustained the aggravated felony allegation, and remanded to the Immigration Judge for a determination as to the availability of any form of relief from removal. Munez-Morales declined to seek

7

relief from removal, so the Immigration Judge entered an order of removal to Mexico.

Munez-Morales appealed the order of removal to the Board. On September 16, 2008, the Board dismissed the appeal, rejecting Munez-Morales's arguments that the Immigration Judge erred by considering the contents of the pre-sentencing report, that 8 U.S.C. § 1101(a)(43)(D) should be limited to crimes having a $10,000 amount requirement as an element of the offense, and that the pre-sentencing report's preponderance-of-the-evidence standard was insufficient to prove the $10,000 amount to the clear and convincing standard required for removal proceedings.

## II.

We begin by considering whether the Board was correct to conclude that 8 U.S.C. § 1101(a)(43)(D) invites investigation into the facts underlying a particular conviction, rather than being limited to those crimes for which a $10,000 amount-involved requirement is an element of the offense. We review the Board's legal conclusions de novo. *Smriko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir. 2004).

In *Nijhawan v. Holder*, the Supreme Court reviewed how to determine whether a statute categorizing convictions permits investigation beyond the elements of those convictions and into the facts underlying them. 557 U.S. ___, 129 S. Ct. 2294, 2300-02 (2009). First, the Court reviewed its earlier decisions regarding the Armed Career Criminal Act (ACCA), which categorizes felony convictions as either convictions for "violent" felonies or convictions for non-violent felonies. The ACCA defined "violent"

8

felonies "to include 'burglary, arson, or extortion' and 'crime[s]' that have 'as an element' the use or threatened use of force." *Id.* at 2300 (quoting 18 U.S.C. §§ 924(e)(2)(B)(i)-(ii)). The Court noted that this particular language referred "to generic crimes," inviting an examination only of the elements of the criminal statute in question, not the facts underlying a particular conviction. *Id.* The ACCA also included within its violent felony definition "'crime[s]' that 'involv[e] conduct that presents a serious potential risk of physical injury to another.'" *Id.* The Court noted that this language was more ambiguous but still referred "to crimes as generically defined," precluding investigation of the facts underlying particular convictions. *Id.* (citing *James v. United States*, 550 U.S. 192, 202 (2007)).

The Court then turned to interpreting 8 U.S.C. § 1101(a)(43), which provides many separate categories of convictions that constitute convictions of aggravated felonies. Although the Court did not interpret section 1101(a)(43)(D), which is at issue here, it did interpret several other portions of section 1101(a)(43). First, the Court examined section 1101(a)(43)(A), listing "murder, rape, or sexual abuse of a minor" as "aggravated felon[ies]." The Court held that this definition referred to the generic crimes, not the specific offenses committed by particular individuals. Similarly, the Court held that section 1101(a)(43)(B), labeling "illicit trafficking in a controlled substance" an "aggravated felony," referred to the generic crime. *Id.* The Court found that subparagraphs (A), (B), (C), (E), (H), (I), (J), and (L) of section 1101(a)(43) referred to

9

generic crimes. *Id.* But the Court noted that other portions of section 1101(a)(43) appeared to refer to the specific circumstances of particular convictions. In particular, subparagraph (P), while including the generic crime of "forging . . . passport[s]" as an "aggravated felony," excluded from that category any conviction that constituted "a first offense for which the alien . . . committed the offense for the purpose of assisting . . . the alien's spouse, child, or parent." *Id.* The Court held that this language "must refer to the particular circumstances in which an offender committed the crime on a particular occasion." *Id.* at 2301. Similarly, the Court found that the language in section 1101(a)(43)(K)(ii) relating to commission of particular offenses "for commercial advantage," as well as the language in section 1101(a)(43)(M)(ii) relating to offenses "in which the revenue loss to the Government exceeds $10,000," were clear references to specific facts underlying particular convictions. *Id.*

Having thus found that section 1101(a)(43) contained some references to facts underlying specific convictions and some references to generic crimes, the Court turned to the provision actually at issue in *Nijhawan*, section 1101(a)(43)(M)(i), which refers to "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." The Court found that the use of the phrase "in which" invited investigation into the specific offense at issue, rather than only into the elements of the statute under which the conviction occurred. *Id.* In addition, the Court noted that, absent investigation into the facts underlying the conviction, section 1101(a)(43)(M)(i) would

10

have nearly no application, because there were few (if any) criminal fraud statutes that contained as an element of the offense a requirement that the loss exceed $10,000. *Id.* Thus, section 1101(a)(43)(M)(i) would not classify any conviction at all as an "aggravated felony" unless it was interpreted to permit investigation of the underlying facts of a particular conviction. The Court interpreted the statute to avoid this absurd result.

Similar analysis is possible here. Section 1101(a)(43)(D) classifies as an aggravated felony a conviction for "an offense described in section 1956 of title 18 (relating to laundering of monetary instruments) … if the amount of the funds exceeded $10,000." Although this lacks the "in which" language present in section 1101(a)(43)(M)(i), interpreting it to refer only to generic crimes would render section 1101(a)(43)(D) utterly meaningless. If the statute were interpreted to allow investigation only into the statutory elements of the generic crime of which someone was convicted, it would classify as aggravated felonies only those crimes defined in 18 U.S.C. § 1956 which included as an element a requirement that the laundered funds exceed $10,000. But no crime defined in 18 U.S.C. § 1956 includes such an element, so section 1101(a)(43)(D) would be meaningless under this interpretation. Given the Supreme Court's reluctance in *Nijhawan* to find portions of section 1101(a)(43) meaningless, we cannot find fault with the Board's interpretation of section 1101(a)(43)(D) here as inviting investigation into the facts underlying a particular conviction. Moreover, as we

11

noted in our *Nijhawan* decision, section 1101(a)(43)(D) has qualifying language "analogous" to that used in section 1101(a)(43)(M)(I), so they should be treated similarly. *Nijhawan v. Attorney General*, 523 F.3d 387, 391 (3d Cir. 2008), *aff'd*, 129 S. Ct. 2294 (2009). We therefore hold that the Board properly interpreted section 1101(a)(43)(D) as inviting investigation into the facts underlying a particular conviction.

## III.

We next consider whether the Board was correct to find that sufficient evidence was presented in this case to determine that the conspiracy of which Munez-Morales was a part actually laundered more than $10,000. To prove that Munez-Morales is removable, the government must offer sufficient evidence to meet a "clear and convincing" standard. 8 U.S.C. § 1229a(c)(3)(A). The Supreme Court has rejected any artificial limit on the evidentiary sources to which the court can look in determining whether the government has carried this burden. *Nijhawan*, 129 S. Ct. at 2302-03 (rejecting suggested limitation of sources to charging documents, jury instructions, special jury findings, judge-made findings, written plea documents, and plea colloquy). Thus, the Immigration Judge, the Board, and this court are all entitled to look to any evidence properly of record to determine the amount of funds laundered by the conspirators. This evidence includes both the pre-sentencing report and any factual findings made by the sentencing judge. *Alaka*, 456 F.3d at 106 (finding no error by the Immigration Judge in considering the explicit sentencing findings of the sentencing judge, as further explained in the

12

pre-sentencing report).

Here, the government points to two pieces of evidence. First, there is a statement in the pre-sentencing investigation report that "[t]he United States estimated the offense involved from $400,000 to $1,000,000 in laundered money." The pre-sentencing report uses this figure to determine the guideline fine range as $2,000 to $2,000,000. Second, during Munez-Morales's sentencing hearing, in the process of explaining the sentencing guideline calculations to Munez-Morales, the sentencing judge stated that the permissible range of fines was "$2,000 to $2 million . . . Have I got that fine right or is that half a million dollars? It's twice, okay, two million." Given the availability of a fine of $2,000,000, and given that the maximum fine available under 18 U.S.C. § 1956 is twice the amount of the laundered funds, the government argues that the sentencing judge must necessarily have found that the conspiracy laundered $1,000,000 in funds. The government puts special emphasis on the fact that the sentencing judge found sufficient indicia of reliability to support the probable accuracy of the pre-sentencing report. The government also notes that Munez-Morales did not object to the judge's statement that the maximum fine available was $2,000,000. On the other hand, Munez-Morales points out that the facts in the pre-sentencing report only need to be supported by a preponderance of the evidence, not "clear and convincing" evidence, and that the sentencing judge's comments about the maximum fine were based solely on the statements in the pre-sentencing report, themselves supported only by a preponderance of

13

the evidence.

As discussed above, the Board properly considered both the pre-sentencing report and the factual findings made by the sentencing judge. The remaining question thus is whether the findings of the judge and the pre-sentencing report, taken together, satisfy the "clear and convincing" standard necessary to find Munez-Morales removable. We note first that Munez-Morales is correct that the statements in the pre-sentencing report need only be supported by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 156-57 (1997). But we disagree with Munez-Morales that this necessarily means that any finding by the sentencing judge based on the statements in the pre-sentencing report can satisfy only the preponderance-of-the-evidence standard. Munez-Morales and his counsel had an opportunity before the sentencing hearing to review and propose changes to the pre-sentencing report, and none of their proposed changes related to the amount of money laundered by the conspirators. Munez-Morales and his counsel again had an opportunity at the sentencing hearing to object to the contents of the pre-sentencing report and to the sentencing judge's adoption of the pre-sentencing report as his findings of fact. They made no objection. During the proceedings before the sentencing judge, the Immigration Judge, the Board, and this court, Munez-Morales has never produced or indicated the existence of any evidence that contradicts the statement in the pre-sentencing report that between $400,000 and $1,000,000 was laundered by the conspirators. Given that Munez-Morales had ample opportunity to object to any factual

14

findings he considered improper and failed to do so, and given that we have not been made aware of the existence of any other evidence that is alleged to contradict the pre-sentencing report's estimate that over $400,000 was laundered, we can find no fault with the Board's conclusion that there was clear and convincing evidence that the amount of money laundered by the conspirators exceeded $10,000. Accordingly, we will deny Munez-Morales's petition for review.