**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2315
_____

MOURAD MADRANE,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review from the Board of Immigration Appeals
(B.I.A. No. A077-650-840)
Immigration Judge: Hon. Walter A. Durling
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 23, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Filed:   May 4, 2016)

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

Mourad Madrane petitions for review of orders of the Board of Immigration

Appeals ("BIA") denying him withholding of removal, deferral of removal under the

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Convention Against Torture ("CAT"), and adjustment of status. For the reasons that follow, we will deny the petition in part and dismiss it in part for lack of jurisdiction.

I[1]

Madrane is a native and citizen of Morocco who was admitted to the United States in 1997 as a non-immigrant visitor. His visa expired on April 10, 1998. In 1999, he married a U.S. citizen, who filed an I-130 petition for alien relative status on his behalf, which was approved. Madrane also applied for adjustment of status. Shortly afterwards, Madrane pled guilty in federal court for his role in a scheme to steal credit card information and make fraudulent purchases using counterfeit credit cards, in violation of 18 U.S.C. § 1029(a)(2)-(4), (b)(2). Madrane stole hundreds of credit card numbers from patrons of a restaurant where he worked as a waiter, which he then passed to his co-defendant to make counterfeit credit cards. According to the Presentence Investigation Report ("PSR"), some of the stolen numbers were used to make more than $172,000 in purchases. Madrane himself was paid "$100 or so per credit card," and made purchases of up to $12,000 using counterfeit cards. AR 1737.

At sentencing, Madrane disputed the manner for calculating the intended loss from his theft for sentencing guideline purposes,[2] but did not dispute the PSR's calculation of

---

[1] We only recount the procedural history relevant to this appeal.

[2] The intended loss took into account an estimated loss for credit card numbers that had not yet been fraudulently used. The Government argued that a figure of $2,000 per credit card was warranted and the defense argued that $500 per card was more appropriate. The District Court chose to apply a $500 figure, as Madrane requested and the PSR recommended.

the actual losses suffered by the victims. Because Madrane was responsible for procuring all of the card numbers, he was deemed responsible for the same amount of loss as his co-defendant. Madrane was sentenced to eighteen months in prison for each of four counts, to run concurrently, and ordered to pay $180,442.02 in restitution. **AR 2392, 2396.**

After Madrane completed his prison sentence, his application for adjustment of status was denied because of his criminal conviction, and removal proceedings were initiated. Madrane requested withholding of removal and protection under the CAT, claiming that he fears harm from the Muslim Brotherhood because of his willingness to testify against his co-defendant, whose brother is a member of the Muslim Brotherhood, and his marriage to a Catholic woman.

In 2004, the Immigration Judge ("IJ") denied Madrane's application, finding him ineligible for withholding of removal because he had committed a "particularly serious crime," AR 2161, and concluding that he did not merit CAT protection because the Muslim Brotherhood was "a private organization in no way affiliated with the Moroccan government." AR 2164. The BIA affirmed the IJ's decision without opinion and denied a motion for reconsideration.

In 2005, the Department of Homeland Security initiated new proceedings charging Madrane with removability for remaining in the United States longer than permitted under 8 U.S.C. § 1227(a)(1)(B), and for having been convicted of a crime involving moral turpitude under § 1227(a)(2)(A)(i) and an aggravated felony under § 1227(a)(2)(A)(iii). The IJ found Madrane removable for overstaying his visa and for

3

committing a crime of moral turpitude, but not for an aggravated felony. The IJ applied the modified categorical approach, noted that the indictment did not allege losses of over $10,000, and found that the $10,000 loss requirement for a fraud offense to qualify as an aggravated felony was not met.

In July 2006, Madrane applied for a waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act ("INA"), and for adjustment of status. See 8 U.S.C. § 1182(h) (also referred to as INA § 212(h)). The IJ granted the § 212(h) waiver due to the hardship Madrane's wife would suffer should he be deported. The BIA disagreed and held that it could not "conclude either that [Madrane] ha[d] shown genuine rehabilitation or that it would be in the best interest of this nation to grant him relief," and he therefore did not merit a discretionary 212(h) waiver.[3] AR 1013. The BIA nonetheless remanded to the IJ to allow Madrane to apply for withholding of removal.

On remand, Madrane requested withholding of removal and CAT protection due to fear of harm from both the Muslim Brotherhood and the Moroccan government, which he claimed could suspect him of association with the Muslim Brotherhood. He submitted evidence that his father felt threatened by the Muslim Brotherhood and had been interrogated by police, and that his brother died after being beaten by someone who his family believed was a member of the Muslim Brotherhood. The IJ reaffirmed his earlier finding that Madrane had failed to demonstrate eligibility for CAT relief. The IJ found

---

[3] Because the BIA made the discretionary determination that Madrane did not merit a waiver, it did not consider his statutory eligibility for such relief.

4

that the deaths of his brother and mother, which he implies occurred because of his brother's passing, did not add substance to his claim, he showed no connection between the Muslim Brotherhood and the Moroccan government, and his fears that the government itself would torture him were too speculative. The IJ also revisited Madrane's conviction in light of Nijhawan v. Holder, 557 U.S. 29, 36 (2009), and concluded that Madrane was convicted of an aggravated felony, reasoning that the amount of loss from his fraud exceeded $10,000 based upon the amount of forfeiture that was ordered. Finally, the IJ found that Madrane's crime was properly characterized as "particularly serious," barring him from eligibility for withholding of removal. AR 410-11.

On appeal, the BIA confirmed that the IJ rightly revisited the question of whether Madrane's conviction was for an aggravated felony due to the intervening legal authority on this point, but held that it was improper to consider the amount of forfeiture, which is "based on the offender's gain rather than the victim's loss." AR 305. The BIA nonetheless upheld the IJ's conclusion that Madrane had been convicted of an aggravated felony, since the sentencing court had ordered Madrane to pay $180,442.02 in restitution to compensate victims for their losses. The BIA also upheld the IJ's conclusion that the offense constituted a particularly serious crime "due to the large number of victims, his length of sentence, and the high amount of restitution ordered," barring Madrane from withholding of removal. AR 307. However, the BIA remanded the CAT claim to ensure that the IJ considered whether the Moroccan government acquiesced in potential

5

mistreatment by the Muslim Brotherhood by displaying willful blindness to it.

The IJ once again denied the CAT claim because Madrane's fear of torture from the Muslim Brotherhood and the Moroccan government were speculative, and because he failed to present evidence that the government would acquiesce in any torture by the Muslim Brotherhood. Madrane again appealed to the BIA, which held that Madrane had failed to meet his burden of establishing that he was more likely than not to be tortured because he did not provide evidence that connected the death of his brother and possible disappearance of his father[4] to his willingness to cooperate with U.S. law enforcement, or demonstrate that the Muslim Brotherhood was responsible for, or the Moroccan government was involved in or knew of the circumstances of, his brother's death. Similarly, the BIA found that statements from Madrane's father that he was interrogated by police about his sons' connections to terrorism or the Muslim Brotherhood did not establish that the Moroccan authorities were likely to suspect Madrane of being affiliated with the Muslim Brotherhood, or to torture him. While the BIA acknowledged that country conditions evidence did demonstrate that Morocco has utilized torture and committed human rights abuses, it found that Madrane failed to present evidence that he would be "personally at risk" of such treatment. AR 5. The BIA said that Madrane's evidence "almost exclusively relate[d] to his father and brother" and he did not establish how their experiences related to him, or "that each link in the hypothetical chain of events

---

[4] Madrane submitted additional materials to the IJ, including a new statement that he had not heard from his father since 2011 and feared that something bad had happened to him.

6

leading to the torture he fears is more likely than not to occur." AR 5. Madrane petitions

for review.

## II[5]

### A

Madrane argues that the BIA wrongfully considered him ineligible for withholding

of removal because it incorrectly held that he committed a particularly serious crime.

Withholding of removal does not confer upon an alien the right to remain in the United

States indefinitely, but grants the temporary right not to be deported to a particular

country in which "there is a 'clear probability that the alien's life or freedom would be

threatened upon [his or] her removal.'" Garcia v. Att'y Gen., 665 F.3d 496, 505 (3d Cir.

2011) (quoting Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005)). However,

withholding of removal is not available to aliens that the Attorney General determines

have been convicted of a "particularly serious crime," making them "a danger to the

community" of the United States. 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2).

In this Circuit, an offense must be an aggravated felony to constitute a particularly

---

[5] The BIA had jurisdiction under 8 C.F.R. § 1003.1. We have jurisdiction under 8 U.S.C. § 1252(a)(1). However, because Madrane is removable by reason of a criminal offense, our jurisdiction is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(C), (D). Furthermore, we lack jurisdiction over discretionary relief such as the grant or denial of a waiver of inadmissibility under § 212(h), except insofar as it too raises a constitutional or legal issue. 8 U.S.C. § 1252(a)(2)(B), (D). Because the BIA issued reasoned decisions on the merits, as opposed to summary affirmances of the IJ, we review the BIA's decisions. Bautista v. Att'y Gen., 744 F.3d 54, 57 (3d Cir. 2014).

serious crime.  Alaka v. Att'y Gen., 456 F.3d 88, 105 (3d Cir. 2006).[6]

Madrane's argument that his crimes were not particularly serious rests solely on his claim that the BIA improperly classified them as aggravated felonies.  The INA defines the term "aggravated felony" to include "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  8 U.S.C. § 1101(a)(43)(M)(i).  Madrane does not dispute that his crimes involved fraud or deceit, but argues that the Government failed to meet its burden of showing that his crime involved losses to the victims exceeding $10,000, even under the "circumstance-specific" approach of Nijhawan.[7]  557 U.S. at 36.

The record clearly demonstrates that the losses incurred were significantly more than $10,000, and Madrane has not shown otherwise.  Among other things, the BIA properly considered the amount of restitution ordered as a measure of the victims' losses.  Restitution may establish loss for the purposes of § 1101(a)(43)(M)(i) where indicia of reliability are present, such as where a petitioner "fail[ed] to contest[ ] [it] during the

---

[6] Aggravated felonies for which the term of imprisonment is less than five years are not automatically considered particularly serious, but may be designated so by an IJ upon consideration of "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction."  In re N-A-M-, 24 I. & N. Dec. 336, 342 (2007); see also Denis v. Att'y Gen., 633 F.3d 201, 214-16 (3d Cir. 2011) (citing N-A-M- and collecting other cases concerning the classification of particularly serious crimes).

[7] Nijhawan, 557 U.S. at 41-43, holds that when determining whether losses exceed $10,000 for the purpose of establishing removability, a court may go beyond the record of conviction that would ordinarily be consulted, such as the charging documents, jury instructions, plea agreement, and plea colloquy, and consider additional evidence such as sentencing information and the amount of restitution ordered.

criminal proceedings," failed to show during removal proceedings that it was erroneously determined, or where it significantly exceeds the $10,000 threshold. In re Babaisakov, 24 I. & N. Dec. 306, 320 (2007). Here, Madrane did not contest the restitution amount at sentencing, nor does he challenge his counsel's representation that he personally used stolen credit card numbers to make purchases of between $8,000 and $12,000.[8] AR 1737. Thus, the loss from his crimes exceeded $10,000 and the BIA therefore correctly concluded that Madrane's conviction satisfied the aggravated felony requirement for a particularly serious crime, and his petition for review will be denied with respect to his claim for withholding of removal.

B

Next, Madrane argues that the BIA erred by denying his claim for deferral of removal under the CAT, 8 C.F.R. § 1208.17(a). Deferral of removal is available to aliens who are subject to mandatory denial of withholding but have otherwise satisfied the requirements for CAT protection by demonstrating that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Toussaint v. Att'y Gen., 455 F.3d 409, 413 (3d Cir. 2006) (citation omitted); see also 8 C.F.R. §§ 208.16(c)(4), 1208.16(c)(4). This torture must take place "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an

---

[8] Madrane argues that his attorney "did object to the loss calculation," citing a portion of the sentencing record in which Madrane could not agree with the Government on the intended loss from credit card numbers that were stolen but not fraudulently used. Pet's Br. at 22. There was no challenge to the amount of losses from fraudulent spending, which was the basis of the restitution award.

9

official capacity." 8 C.F.R. §§ 208.18(a)(1), 1208.18(a)(1). To constitute acquiescence, the government "need not [have] actual knowledge . . . of torturous conduct particular to the petitioner." Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 64 (3d Cir. 2007). Rather, a petitioner can satisfy his burden "by producing sufficient evidence that the government in question is willfully blind to such activities." Id. at 65.

Madrane attempts to cast his disagreement with the BIA as a question of law by arguing that the BIA "misconstrued" the legal standards that apply to requests for CAT relief. See Pet.'s Br. at 31-32. First, Madrane argues that the BIA incorrectly stated that the country conditions evidence was insufficient to show that Madrane was "personally at risk" of torture. AR 5. The BIA did not state as a matter of law that country conditions evidence can never in any case be sufficient to carry a petitioner's burden. Rather, it concluded that the type of general evidence of human rights violations presented in this case is insufficient to show that any one individual would be at risk, and that Madrane failed to present sufficient evidence to demonstrate that the Morrocan government would suspect him of involvement with the Muslim Brotherhood. The BIA's weighing of the evidence to conclude that it is unlikely that Madrane would be targeted, or that Madrane's country conditions evidence is insufficient, is a factual determination beyond our jurisdiction to review. Green v. Att'y Gen., 694 F.3d 503, 506 (3d Cir. 2012).

The same can be said of Madrane's second argument, that the BIA "ignored the country conditions evidence indicating that the Islamist PJD [Party of Justice and Development,] which swept Morocco's 2011 parliamentary election, is an affiliate of the

10

Muslim Brotherhood," Pet.'s Br. at 34 (internal quotation marks and citations omitted), and thus erroneously failed to consider the Muslim Brotherhood to be "part of the government," Pet.'s Br. at 35. He contends that the BIA should have used the test set forth in Kamara v. Attorney General, in which we held that a petitioner's likelihood of being tortured by two separate groups with government acquiescence should be added together to ascertain whether he is more likely than not to be tortured. 420 F.3d 202, 213-14 (3d Cir. 2005).

In this case, Madrane's argument is plainly an attack on the BIA's underlying factual finding that he did not establish that the Moroccan government would acquiesce in torture by the Muslim Brotherhood. We lack jurisdiction to review such fact finding and Madrane cannot obtain review of such factual determinations "simply by attaching a particular label to [his] claim." Cospito v. Att'y Gen., 539 F.3d 166, 170 (3d Cir. 2008) (citing Jarbough v. Att'y Gen., 483 F.3d 184, 189-90 (3d Cir. 2007)). Consequently, Madrane's petition for review of the denial of his CAT claim must be dismissed for lack of jurisdiction.

C

Finally, Madrane argues that the BIA erred in concluding that he committed an aggravated felony and that this error caused him to be erroneously denied a waiver under § 212(h). The Attorney General has the power to adjust aliens to lawful permanent resident status if they are admissible and an immigrant visa is immediately available to them. 8 U.S.C. § 1255(a). There is no dispute that Madrane is inadmissible for a crime

11

involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i). In addition, as we just explained, the BIA did not err in finding he committed an aggravated felony.

Section 212(h) allows inadmissibility to nonetheless be waived where denial of admission to the United States would "result in extreme hardship" to a citizen or permanent resident family member. 8 U.S.C. § 1182(h). Here, the BIA evaluated Madrane's request for a § 212(h) waiver on its merits and denied him a waiver as an exercise of its discretion. We lack jurisdiction to review this discretionary decision. See 8 U.S.C. §§ 1182(h), 1252(a)(2)(B). Thus, Madrane's claim that the BIA erred in failing to allow him to adjust status must be dismissed for lack of jurisdiction.

## III

For the foregoing reasons, we will deny the petition with respect to Madrane's withholding of removal claim, and dismiss the petition with respect to his CAT claim and request to adjust his status.

12