**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3201
_____

OTIS KEVIN VIDALE,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Final Order of
the Board of Immigration Appeals
(BIA No. A036-866-948)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 28, 2019
_____

Before: CHAGARES, GREENAWAY, JR., and GREENBERG, *Circuit Judges*.

(Filed: August 29, 2019)

_____

OPINION *
_____

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Petitioner Otis Kevin Vidale ("Vidale") challenges a final order of removal of the Board of Immigration Appeals ("BIA"). In support, he raises four arguments. Because each is unavailing, however, we will deny his petition for review.

## I. BACKGROUND

A citizen of Trinidad and Tobago, Vidale became a lawful permanent resident of the United States in October 1980, at the age of eight. In February 2000, he was convicted of third-degree assault with intent to cause physical injury in violation of New York state law. *See* N.Y. Penal Law § 120.00(1). In September 2008, he was convicted of (1) bank fraud and (2) conspiracy to commit bank fraud and wire fraud, both in violation of federal law. *See* 18 U.S.C. § 1344; *id.* at § 371.

Vidale's judgment of conviction for the federal offenses indicates that he was sentenced to time served and one year of supervised release and ordered to pay $48,898.55 in restitution, for which he and a co-defendant were deemed jointly and severally liable. The judgment of conviction also expresses that the "[t]otal [l]oss" for the scheme was the same as the restitution amount: $48,898.55. App. 22. But the superseding indictment, to which Vidale pled guilty, specifically attributes to Vidale criminal transactions totaling only $5,809.91.

Several years after serving his sentence, Vidale embarked on a short vacation abroad with his family. In August 2014, he returned to the United States, at a port in Miami, Florida. Although he sought admission as a lawful permanent resident, the United States Department of Homeland Security ("DHS") paroled him into the United

2

States as an applicant for admission, deferring his inspection pending a review of his criminal history.

Nearly three years later, in June 2017, DHS personally served Vidale with a Notice to Appear ("NTA"), charging him with removability as an applicant for admission convicted of a crime involving moral turpitude ("CIMT") under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act of 1965 ("INA"), 8 U.S.C. § 1182(a)(2)(A)(i)(I). Importantly, the NTA did not specify the time and date of his removal hearing. A few days later, however, he received a Notice of Hearing ("NOH"), which did indicate the time and date of his removal hearing.

Over the next several months, Vidale moved to terminate the removal proceedings and applied for cancellation of removal. But one Immigration Judge ("IJ") denied the termination motion, ruling that DHS had indeed established that Vidale was removable under section 212(a)(2)(A)(i)(I) of the INA, *id.* Then, another IJ denied the cancellation of removal application, ruling that Vidale had not demonstrated eligibility for cancellation of removal under section 240A(a)(3) of the INA, *id.* § 1229b(a)(3). The second IJ thus ordered that Vidale be removed to Trinidad and Tobago.

Vidale appealed the IJs' decisions to the BIA. There, he reasserted an array of his previously raised arguments. But the BIA, in a single-member decision, rejected each argument and dismissed the appeal. As a result, the IJ's removal order became final. *See* 8 C.F.R. § 1241.1(a).

Vidale accordingly sought relief from us, timely filing the instant petition for review. Another Panel of our Court previously granted his emergency motion to stay his

3

removal pending our consideration of his petition.  Consequently, he is currently detained in a facility in Newark, New Jersey.

Below, we assess the merits of Vidale's petition for review.  His petition reiterates several arguments he previously asserted—and which the IJs and BIA rejected—in prior stages of this litigation.  Today, we also reject each of his arguments.  We will accordingly deny the petition for review in full.

## II. JURISDICTION AND STANDARD OF REVIEW

Assuming jurisdiction properly vested, *see infra* section III.A, the BIA and IJs (collectively, "Agency") had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3), 1003.14(a). Our jurisdiction arises under 8 U.S.C. § 1252(a)(1).  While we lack jurisdiction to review, like here, a final order of removal against a noncitizen removable by virtue of having committed certain criminal offenses, *see id.* § 1252(a)(2)(C), we retain jurisdiction to address constitutional and legal issues, *see id.* § 1252(a)(2)(D).  We review such constitutional and legal issues *de novo*.  *Green v. Att'y Gen.*, 694 F.3d 503, 506 (3d Cir. 2012).

## III. DISCUSSION

In his petition for review, Vidale asserts four broad arguments.  Namely, he avers that the BIA erred by ruling that: (A) *Pereira v. Sessions*, 138 S. Ct. 2105, 2112–20 (2018), did not deprive the Agency of jurisdiction; (B) the term "CIMT" is not unconstitutionally vague; (C) the delay of nearly three years between when he was paroled into the United States and when his NTA was filed did not violate his due process

4

rights; and (D) his federal convictions qualify as aggravated felonies. We address, and reject, each legal argument in turn.

## A. The Agency Had Jurisdiction

Vidale first contends that jurisdiction never properly vested with the Agency because his NTA failed to include the time and date of his removal hearing. To make this argument, he gloms onto *Pereira*, where the Supreme Court also confronted an NTA that lacked the time and date of the petitioner's removal hearing. *Id.* at 2112. There, the Supreme Court held that an NTA "that fails to designate the specific time or place of the noncitizen's removal proceedings is not a[n NTA] under section [239 of the INA, 8 U.S.C. §] 1229(a), and so does not trigger the stop-time rule."[1] *Pereira*, 138 S. Ct. at 2114 (internal quotation marks omitted). Though he carefully does not characterize his argument as such, Vidale essentially urges us to extend *Pereira* from its "narrow" domain concerning the stop-time rule, *id.* at 2110, to the broader realm of the Agency's jurisdiction.

The BIA rejected this argument, relying heavily on its prior precedential decision in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018). There, the respondent also received an NTA that lacked the time and date of his removal hearing

---

[1] Under federal immigration law, a nonpermanent resident subject to removal proceedings may be eligible for cancellation of removal if, among other things, she has "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application" for cancellation of removal. *Id.* § 1229b(b)(1)(A). Under the stop-time rule, however, the period of continuous presence is "deemed to end . . . when the [noncitizen] is served a[n NTA] under section [239 of the INA, *id.* §] 1229(a)." *Id.* § 1229b(d)(1).

and similarly argued, citing *Pereira*, that the Agency therefore lacked jurisdiction. *Id.* at 442–43. But the BIA repudiated that challenge and upheld the "two-step notice process," ruling that an NTA "that does not specify the time and place of a[ noncitizen]'s initial removal hearing vests an [IJ] with jurisdiction over the removal proceedings . . . so long as [an NOH] specifying this information is later sent to the [noncitizen]." *Id.* at 447.

Since Vidale filed the instant petition, another Panel of our Court has rejected this very jurisdictional challenge in a precedential opinion. In *Nkomo v. Attorney General*, 930 F.3d 129, 130 (3d Cir. 2019), the Panel held that "a[n] [NTA] that fails to specify the time and place of an initial removal hearing [does not] deprive[] an [IJ] of jurisdiction over the removal proceedings." We are now bound by that holding. *See Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008) ("It is the tradition of this [C]ourt that the holding of a [P]anel in a precedential opinion is binding on subsequent [P]anels. Thus, no subsequent [P]anel overrules the holding in a precedential opinion of a previous [P]anel. Court en banc consideration is required to do so." (citing Third Circuit I.O.P. 9.1)). Accordingly, we must reject Vidale's jurisdictional challenge.

### B. The Term "CIMT" Is Not Unconstitutionally Vague

Vidale next argues that the term "CIMT" in section 212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I), is unconstitutionally vague. In support of this argument, Vidale relies heavily on our decision in *Mateo v. Attorney General*, 870 F.3d 228, 233 (3d Cir. 2017), and the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018), both of which deemed another provision incorporated in the INA void for vagueness. As those two cases also recognized, a statute is unconstitutionally vague if it

6

is "so vague that it fails to give ordinary people fair notice of the conduct it punishes[] or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (citation omitted).

The BIA rebuffed Vidale's argument for two primary reasons. First, it noted that the Agency lacks jurisdiction to determine the constitutionality of the INA. *See Matter of Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997). Second, it observed that, in any event, Vidale never averred that his individual convictions do not constitute CIMTs.

We similarly reject Vidale's contention. While *Mateo* and *Dimaya* indeed opened the door to voidness challenges in the immigration context, *Moreno v. Attorney General*, 887 F.3d 160, 166 (3d Cir. 2018), forecloses this specific challenge. In that case, we determined that the term "CIMT," as it appears in the very provision Vidale now contests, is not unconstitutionally vague. *Id.* at 165–66 (discussing Supreme Court precedent that the term "CIMT" is "not void for vagueness because it complie[s] with '[t]he essential purpose of the 'void for vagueness' doctrine[,]' *i.e.*, it 'warn[s]' the defendant that, were he to commit a crime 'in which fraud was an ingredient[,]' then the 'statutory consequence' of his conviction would be deportation" (second, third, and fifth alterations in original) (quoting *Jordan v. De George*, 341 U.S. 223, 229–32 (1951))). Of course, Vidale cannot credibly claim he lacked fair notice of this standard when the Supreme Court recognized in *Jordan* that "crimes in which fraud [is] an ingredient have always been regarded as involving moral turpitude" in 1951—well before, for example, his bank fraud conviction in 2008. 341 U.S. at 232.

7

Seemingly seeing the writing on the wall, Vidale protests that *Moreno* is inapposite because it predates *Dimaya*. But *Dimaya* does not demand that we overrule *Moreno* for three reasons. First, *Dimaya* only extended to the immigration context the Supreme Court's earlier reasoning in *Johnson*, which *Moreno* postdated. Second, we are obliged to follow controlling Supreme Court precedent—here, *Jordan*, on which *Moreno* relied—even if a later Supreme Court case casts some doubt on its general reasoning. *See Hohn v. United States*, 524 U.S. 236, 252 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." (citation omitted)). Third, *Dimaya* interpreted a statutory residual clause that did not include the term "CIMT" and which was untethered to recognized common law principles. *See Dimaya*, 138 S. Ct. at 1211. Accordingly, we remain bound by *Moreno* and thus reject Vidale's vagueness challenge.[2]

## C. Vidale's Due Process Rights Were Not Violated

Vidale also contends that his due process rights were violated by the nearly three-year delay between when he was paroled into the United States when his NTA was filed. As the basis for this argument, Vidale points to *Doe v. Attorney General*, 659 F.3d 266, 272 (3d Cir. 2011), which he claims stands for the general proposition that procedural due process imposes time limits on the commencement of a noncitizen's removal

---

[2] We note that at least one of our sister circuits has also rejected this same challenge after *Dimaya*. *See Martinez-de Ryan v. Whitaker*, 909 F.3d 247, 251–52 (9th Cir. 2018) (holding that the term "CIMT" in section 212(a)(2)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(I), is not void for vagueness).

8

proceedings. But the BIA rejected this argument, chiefly by distinguishing *Doe*. We agree.

As the Agency noted, *Doe* does not cast as wide of a net as Vidale would have it. Instead, *Doe* merely indicates that due process principles are generally implicated in revoking a noncitizen's lawful permanent resident status. *Id.* We did not say in that case—or any other case—that due process imposes time limits on serving a paroled noncitizen with an NTA.

In fact, we have said the very opposite. In *DiPeppe v. Quarantillo*, 337 F.3d 326, 335 n.17 (3d Cir. 2003), we proclaimed that a noncitizen "does not have a constitutional right for her removal hearing to commence at any certain time." Accordingly, we found no due process violation where eight years elapsed between the noncitizen's receiving an order to show cause and the filing of her NTA. *Id.* at 332–35. That ruling and its reasoning apply with full force here.

Even putting that aside, though, Vidale's due process argument also fails because he has not carried his burden as to prejudice. It is well-established that, "[t]o establish a violation of due process, [a noncitizen] must show that substantial prejudice resulted from the alleged procedural errors." *Delgado-Sobalvarro v. Att'y Gen.*, 625 F.3d 782, 787 (3d Cir. 2010) (citation omitted). That Vidale has not done.

As a preliminary matter, the parties disagree on whether we may even review Vidale's assertions of prejudice because he may have waived them by not raising them before the Agency. *See, e.g.*, *Harris v. City of Phila.*, 35 F.3d 840, 845 (3d Cir. 1994) (collecting cases). The underlying record is indeed devoid of any explicit reference to

9

prejudice as it relates to Vidale's due process contention. Vidale seems to concede as much in his reply brief, urging us to exercise our discretionary power to nonetheless address the matter. We opt to do so here because a full resolution of this issue is of "public importance" and entails "a pure question of law" that does not necessitate "additional fact-finding." *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005) (citations omitted).

But, even now, Vidale has not demonstrated that he suffered substantial prejudice by the three-year delay between his admission and the filing of his NTA. Before us, he presents two claims of prejudice: (1) his being subject to indefinite detention and (2) his losing various rights. Both, however, are deficient.

The first claimed prejudice is immaterial because Vidale was not detained during the three-year delay about which he complains. Rather, his detention began only after his NTA was filed. Accordingly, the delay at issue did not result in Vidale's current detention, rendering the detainment and its indefinite nature irrelevant to this prejudice analysis.

The second claimed prejudice is unavailing because, as he concedes, a noncitizen with legal permanent resident status who is classified as an applicant for admission retains that status—complete with the panoply of rights that accompany that status—until the entry of a final administrative order of removal against him. *See Katsis v. INS*, 997 F.2d 1067, 1075–76 (3d Cir. 1993). From the time he was paroled to the entry of his removal order, then, Vidale enjoyed the same rights he had before being deemed an applicant for admission. To the extent that now, while being detained, Vidale cannot

10

avail himself of certain rights, like the option to post bond, because he is classified as an applicant for admission, that has nothing to do with the delay to which he objects. Put simply, during the nearly three years that elapsed between when he was paroled into the United States and when his NTA was filed, Vidale maintained the same rights he had before. As a result, he has not shown that he faced any prejudice, much less substantial prejudice, specifically due to the delay in his NTA's filing. We thus reject Vidale's due process argument.

### D. Vidale's Conviction for Bank Fraud Qualifies as an Aggravated Felony

Finally, Vidale avers that his federal convictions—one for bank fraud and the other for conspiracy to commit bank fraud and wire fraud—do not qualify as aggravated felonies under section 101(a)(43)(M)(i) and (U) of the INA, 8 U.S.C. § 1101(a)(43)(M)(i) (defining "aggravated felony" as being an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000"), (U) (defining "aggravated felony" as being "an attempt or conspiracy to commit an offense described in [section 101(a)(43) of the INA, *id.* § 1101(a)(43)].").

Though he does not contest that both convictions involved fraud, Vidale argues that the loss to the victims did not exceed $10,000. More specifically, Vidale contends that, in determining the loss amount, only his superseding indictment—which specifically attributes to him criminal transactions totaling only $5,809.91, to which he pled guilty— may be considered, not his restitution order—which indicates that he was deemed jointly and severally liable with a co-defendant to pay $48,898.55 in restitution—or his judgment of conviction—which also expresses that the total loss for his scheme was

11

$48,898.55.  Based only on the superseding indictment, then, Vidale asserts that the BIA erred in affirming the IJ's determination that he committed an aggravated felony and is thus ineligible for cancellation of removal.

Applying the "circumstance-specific approach" as directed by the Supreme Court in *Nijhawan v. Holder*, 557 U.S. 29, 38–39 (2009), the BIA decided that the IJ properly considered the loss amount reflected in Vidale's restitution order and judgment of conviction in determining that his federal offenses were aggravated felonies.  In doing so, the BIA reviewed and navigated a handful of our prior decisions related to this issue, relying on *Doe* and *Munroe v. Ashcroft*, 353 F.3d 225, 227 (3d Cir. 2003), and distinguishing *Alaka v. Attorney General*, 456 F.3d 88, 108–09 (3d Cir. 2006), *overruled on other grounds by Bastardo-Vale v. Attorney General*, ___ F.3d ___, 2019 WL 3772097 (3d Cir. 2019).

We agree with the BIA's ruling and analysis.  In assessing whether the loss resulting from Vidale's bank fraud offense exceeded $10,000, "the specific circumstances surrounding [his] commission" of the crime must be considered.  *Nijhawan*, 557 U.S. at 40.  The determined loss amount "must be 'tethered' to the actual 'offense of conviction,' not 'acquitted or dismissed counts or general conduct.'"  *Singh v. Att'y Gen.*, 677 F.3d 503, 508 (3d Cir. 2012) (citations omitted).

*Doe* informs us that, even where a plea agreement only identifies a single transaction under $10,000, we may look beyond that in assessing the total loss amount. *See* 659 F.3d at 276 (determining that the petitioner committed an aggravated felony under section 101(a)(43)(M)(i) of the INA, 8 U.S.C. § 1101(a)(43)(M)(i), where he was

12

convicted of aiding and abetting the entire criminal scheme that caused losses between $120,000 and $200,000, even though his plea agreement only specified a single criminal transaction of $6,447). *Munroe* further buttresses this proposition. 353 F.3d at 227 ("The amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim [unless] the amount of restitution ordered is not based on a finding as to the amount of the loss but is instead intended solely to affect the defendant's immigration status . . . .").

Here, the Agency adhered to this precedent. Although the superseding indictment to which Vidale pled guilty indeed only attributed to him criminal transactions totaling $5,809.91, the restitution order and judgment of conviction together indicate that the "[t]otal [l]oss" of the scheme, for which he was deemed jointly and severally liable with a co-defendant, was $48,898.55. App. 22. Under *Doe* and *Munroe*, the Agency appropriately examined this evidence and determined that the actual loss to victims of Vidale's bank fraud scheme exceeded $10,000.[3]

*Alaka* poses no problem because it is inapposite here. In relevant part, that case merely dictates that dismissed charges may not be considered when calculating the loss attributable to a conviction. *Alaka*, 456 F.3d at 106–09. That is not the case here. Moreover, *Alaka* was concerned with ensuring that "the $10,000 loss requirement" is not "divorce[d]" from "the conviction requirement." *Id.* at 108 (citations omitted). Of

---

[3] To be clear, consideration of the restitution order does not run afoul of *Munroe* because Vidale does not argue, or present any evidence, that the restitution amount was devised "solely to affect [his] immigration status." *Munroe*, 353 F.3d at 227.

course, our relying on the judgment of *conviction* here squarely aligns with that reasoning. We thus reject Vidale's argument and hold that his federal bank fraud conviction was properly deemed an aggravated felony.[4]

## IV. CONCLUSION

Because each of Vidale's arguments are futile, we will deny his petition for review.

---

[4] Because this ruling—that Vidale's federal bank fraud conviction qualifies as an aggravated felony—is independently fatal to his claim for cancellation of removal, we need not decide whether his federal conviction for conspiracy to commit bank fraud and wire fraud also qualifies as an aggravated felony.