**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3161

_____

JOSE REMEDIO GONZALEZ-REYES,
                                        Petitioner,

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent.

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(No. A036-646-071)
Immigration Judge: Alice Song Hartye

_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 21, 2020

(Filed June 10, 2020)

Before:  HARDIMAN, RENDELL and FISHER, Circuit Judges.

**RENDELL**, *Circuit Judge*:

Petitioner Jose Gonzalez-Reyes seeks review of the Board of Immigration Appeals' (BIA) decision to dismiss his appeal and uphold the Immigration Judge's (IJ) determination that he is removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). Gonzalez-Reyes argues that neither his conviction of "food stamp fraud" under 7 U.S.C. § 2024(b)(1) nor his wire fraud conviction qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). We need not reach the food stamp fraud argument because we find that the wire fraud conviction constitutes an aggravated felony, rendering Gonzalez-Reyes removable under 8 U.S.C. § 1227(a)(2)(A)(iii). We will therefore deny the petition for review.[1]

## I. Background[2]

Jose Gonzalez-Reyes was admitted to the United States as a lawful permanent resident (LPR) in 1978. He and his wife operated Kelym Grocery, a small convenience store in Baltimore, Maryland, that participated as an authorized retailer in the

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to hear this appeal from the BIA under 8 U.S.C. § 1252(a)(1).
[2] Because we write for the parties, who are familiar with the facts, we only include what is necessary to explain our decision.

Supplemental Nutrition Assistance Program (SNAP). Between August 2013 and March 2016, the couple debited customers' SNAP Electronic Benefits Transfer (EBT) cards and paid the customers a portion of the value in cash, in violation of the terms of SNAP. The point of sale device they used to debit the funds electronically transmitted wire communications from Maryland to Texas.

On August 17, 2016, Gonzalez-Reyes and his wife were charged with one count of food stamp fraud under 7 U.S.C. § 2024(b) along with aiding and abetting under 18 U.S.C. § 2, and one count of wire fraud under 18 U.S.C. § 1343 and aiding and abetting under 18 U.S.C. § 2. Count three of the Indictment—the wire fraud count—alleged that Gonzalez-Reyes "knowingly used and caused to be used a point of sale device inside Kelym Grocery to redeem beneficiaries' electronic benefits for unauthorized and unlawful purposes" in furtherance of a scheme that resulted in Gonzalez-Reyes and his wife receiving "$879,500 in EBT deposits for food sales that never actually occurred or were substantially inflated." A.R. 335, 336. The portion of the Indictment charging Gonzalez-Reyes with wire fraud specifically noted one March 2015 transaction of $119.98.

On January 30, 2017, Gonzalez-Reyes pled guilty to count one and count three of the Indictment, food stamp fraud and wire fraud, respectively.[3] Attachment A to the plea agreement noted the $119.98 wire fraud incident and stated that Gonzalez-Reyes "agrees

_____

[3] There is some dispute about whether Gonzalez-Reyes pled guilty to aiding and abetting. We need not address this issue as it does not bear on our decision. The IJ did not sustain the charge of removability based on the aiding and abetting charges, and because DHS did not cross-appeal that determination, the BIA deemed the issue waived.

3

that he committed food stamp fraud by exchanging, or causing to be exchanged, cash for food stamp benefits on occasions not included on the chart above." A.R. 350. The District Court accepted the guilty plea and subsequently sentenced Gonzalez-Reyes to a term of imprisonment. The Court also ordered Gonzalez-Reyes and his wife to pay $879,500 in restitution.

On December 27, 2018, the Department of Homeland Security (DHS) filed a Notice to Appear charging Gonzalez-Reyes with deportability as having been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). Gonzalez-Reyes denied the charge and filed a motion to terminate proceedings. He did not dispute that the total loss from both counts exceeded $10,000 but argued, as he does here, that food stamp fraud does not necessarily involve fraud or deceit and that only $119.98 was specifically tied to the wire fraud conviction, so neither qualifies as an aggravated felony.

On March 21, 2019, the IJ issued a written decision denying Gonzalez-Reyes's motion to terminate proceedings and finding that he had been convicted of an aggravated felony. The IJ found that food stamp fraud and wire fraud both involve fraud or deceit and that the total loss tied to each conviction exceeded $10,000. The IJ's decision recognized that the plea agreement only listed one wire fraud transaction but noted that Attachment A to the agreement indicated that Gonzalez-Reyes admitted to exchanging EBT transactions for cash "on occasions not included in the chart." A.R. 148, 206. The IJ found that the mention of one transaction below $10,000 in the plea agreement simply highlighted one example of how Gonzalez-Reyes used interstate wires to facilitate a scheme that resulted in a total loss of $879,500. The IJ also noted that Gonzalez-Reyes

4

did not object when the Amended Pre-Sentence Report (PSR) attributed the total amount of $879,500 to Gonzalez-Reyes's conduct in relation to the wire fraud conviction. The IJ therefore found the total loss was tied to the wire fraud conviction and sustained the removability charge under 8 U.S.C. § 1227(a)(2)(A)(iii). On April 8, Gonzalez-Reyes was ordered removed.

Gonzalez-Reyes appealed to the BIA, which upheld the IJ's decision and dismissed the appeal. The BIA agreed with the IJ's analysis and conclusion that food stamp fraud under 7 U.S.C. § 2024(b) necessarily involves fraud or deceit. The BIA further found that, even if food stamp fraud did not necessarily involve fraud or deceit, Gonzalez-Reyes had been convicted of an aggravated felony because the loss tied to the wire fraud conviction exceeded $10,000. Like the IJ, the BIA noted that Gonzalez-Reyes had agreed that he exchanged EBT transactions for cash on occasions beyond those specified in the plea agreement's chart. The BIA found that the "inter-related nature of the charges and examination of the conviction record shows that the two listed EBT transactions underlying [Gonzalez-Reyes's] and his co-conspirator's wire fraud convictions were in furtherance of the larger conspiracy or scheme of criminal misconduct that resulted in the total restitution amount of $879,500." A.R. 5. The BIA therefore upheld the removability finding and dismissed the appeal.

## II. Standard of Review

Although we lack jurisdiction to review an order of removal where the noncitizen is removable based on having been convicted of an aggravated felony, we retain jurisdiction over the legal question of whether a conviction constitutes an aggravated

felony. 8 U.S.C. § 1252(a)(2)(C), (D); *Chiao Fang Ku v. Attorney Gen.*, 912 F.3d 133, 138 (3d Cir. 2019). We review such questions of law *de novo*. *Chiao Fang Ku*, 912 F.3d at 138.

## III.  Discussion

8 U.S.C. § 1227(a)(2)(A)(iii) authorizes removal of a lawful permanent resident who has been convicted of an aggravated felony. Under 8 U.S.C. § 1101(a)(43)(M)(i), "aggravated felony" includes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." Gonzalez-Reyes contends that neither of his convictions satisfy this definition, the food stamp fraud conviction because it does not involve fraud or deceit and the wire fraud conviction because the loss amount does not exceed $10,000. We need not reach the food stamp fraud question because we find that the loss amount connected to the wire fraud conviction exceeded $10,000 and therefore conclude that Gonzalez-Reyes was convicted of at least one aggravated felony.

Gonzalez-Reyes does not dispute that wire fraud is an offense that "involves fraud or deceit" under 8 U.S.C. § 1101(a)(43)(M)(i), but he argues that the loss associated with his wire fraud conviction did not exceed $10,000. To determine whether the loss to the victim or victims of a crime exceeds $10,000, we apply the "circumstance-specific approach." *Chiao Fang Ku*, 912 F.3d at 139; *Fan Wang v. Att'y Gen.*, 898 F.3d 341, 348 (3d Cir. 2018). Under this approach, we examine the same documents considered in the modified categorical approach—the indictment, plea agreement, and judgment—as well as other documents, "including 'the presentence investigation report and any sentencing-related material.'" *Chiao Fang Ku*, 912 F.3d at 139 (quoting *Fan Wang*, 898 F.3d at 348-

6

49). Based on these documents, we must determine whether the loss amount is "tied to the specific counts covered by the conviction," as opposed to "acquitted or dismissed counts or general conduct." *Nijhawan v. Holder*, 557 U.S. 29, 42 (2009) (citations omitted).

The total loss amount of $879,500 was tied to Gonzalez-Reyes's wire fraud conviction. Gonzalez-Reyes argues that only the $119.98 transaction was tethered to the wire fraud conviction. We disagree. We have previously held that, where documents related to a wire fraud conviction identify one specific transaction in describing a larger scheme, the total loss amount attributable to the scheme may nonetheless be tied to the conviction. *Chiao Fang Ku*, 912 F.3d at 139-41; *Doe v. Attorney Gen.*, 659 F.3d 266, 275 (3d Cir. 2011).

In *Doe v. Attorney General*, the petitioner had been convicted of aiding and abetting wire fraud, and the total loss to victims from the scheme was over $120,000, although the plea agreement only identified one $6,447 transaction. 659 F.3d at 268. We nonetheless found the total loss tied to the conviction, concluding that the petitioner "did not plead guilty to a single discrete act of accepting a $6,447 transfer. He admitted to aiding and abetting the entire scheme." *Id.* at 276. In making that determination, we looked to the plea agreement's discussion of the nature and elements of the offense, which described the scheme as a whole. *Id.* The plea agreement also included a stipulation that the petitioner had opened multiple bank accounts into which fraudulent funds were deposited, causing more than $120,000 in losses. *Id.* We therefore found that the petitioner's "admitted participation was not limited to one $6,447 deposit." *Id.*

7

"[T]hat transaction," in our view, was "included in the plea agreement to establish the 'use of the interstate wires' element." *Id.* The plea agreement as a whole demonstrated that the entire loss amount was tied to the conviction. *Id.*

The same reasoning applies to the facts before us. As in *Doe*, the plea agreement's description of the offense discussed the entire scheme. Gonzalez-Reyes specifically admitted that, from August 2013 through March 2016, he and his wife "*routinely* redeemed and caused to be redeemed food stamp benefits in exchange for cash at less than face value of the food stamp benefits" and, as a result, obtained approximately "$879,500 in food stamp payments for food sales that never actually occurred." A.R. 349 (emphasis added). The portion of the plea agreement explaining how Gonzalez-Reyes used the point of sale device to cause interstate wire transfers specifically identified the transaction on March 12, 2015. But that transaction, like the one in *Doe*, simply offered an example "to establish the 'use of the interstate wires' element." *Doe*, 659 F.3d at 276. To resolve any ambiguity, the plea agreement stated that Gonzalez-Reyes "agrees that he committed food stamp fraud by exchanging, or causing to be exchanged, cash for food stamp benefits on occasions not included on the chart." A.R. 350. The plea agreement thus made clear that Gonzalez-Reyes admitted, not merely to one transaction, but to engaging in wire fraud on multiple occasions to further the larger scheme to defraud.

The Indictment and sentencing documents likewise showed that Gonzalez-Reyes was responsible for the entire wire fraud scheme and the resulting loss of $879,500. The Indictment's discussion of the wire fraud charge explained that, between August 2013

8

and March 2016, Gonzalez-Reyes and his wife repeatedly "caused the Maryland EBT System . . . to electronically transmit an interstate signal that authorized electronic payments to the bank account of Kelym Grocery." A.R. 405. Both the Indictment and the Amended PSR stated that, over the course of the wire fraud scheme, Gonzalez-Reyes and his wife obtained approximately $879,500 in unlawful EBT deposits. The District Court's Amended Judgment similarly noted that the wire fraud offense did not conclude until March 31, 2016 and identified the total loss as $879,500, ordering the same amount in restitution. These documents, along with the plea agreement, lead us to conclude that the total loss of $879,500 was specifically tied to the wire fraud conviction. *See Chiao Fang Ku*, 912 F.3d at 139-40.

Because the loss associated with the wire fraud conviction exceeded $10,000, that conviction constituted an aggravated felony. We need not address the food stamp fraud conviction to determine that the BIA properly upheld the IJ's finding of removability and dismissed Gonzalez-Reyes's appeal.

## IV. Conclusion

For the foregoing reasons, we will deny the petition.