**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-1761

———————

SAT PAUL VERMA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

———————————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A090-577-689)
Immigration Judge: Kelley Fowler

———————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
January 11, 2021

Before: AMBRO, KRAUSE, and PHIPPS, *Circuit Judges*

(Opinion filed: January 27, 2021)

———————

OPINION*

———————

———————————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

AMBRO, *Circuit Judge*,

Sat Verma, a native and citizen of India, entered the United States without proper inspection in 1982 and became a legal permanent resident in 1990. In 2013, he pled guilty to access device fraud in violation of 18 U.S.C. § 1029(a)(5) due to his role in conducting and facilitating sham transactions using fraudulent credit cards and merchant accounts at his jewelry store. The United States District Court for the District of New Jersey convicted and sentenced him to twelve months' imprisonment and three years of supervised release. The Government charged Verma as removable for this conviction, which it argues is an aggravated felony that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." *See* 8 U.S.C. §§ 1101(a)(43)(M)(i) ("(M)(i)"), 1227(a)(2)(A)(iii). One immigration judge ("IJ") agreed Verma indeed committed an aggravated felony, and another denied his application for adjustment of status and waivers of inadmissibility as a matter of discretion. The Board of Immigration Appeals (the "BIA") dismissed Verma's appeal.

In his petition for review to us, Verma argues he did not commit an aggravated felony because the Government failed to prove losses to victims exceeding $10,000. He also challenges the discretionary denial of his application for adjustment of status.

I.

We exercise plenary review over the BIA's determination that Verma committed an aggravated felony under (M)(i). *See Singh v. Att'y Gen.*, 677 F.3d 503, 508 (3d Cir. 2012). In determining whether an offense meets the statutory loss requirement under that provision, we employ a "circumstance-specific" approach, examining "the specific way

2

in which [the noncitizen] committed the crime on a specific occasion." *Nijhawan v. Holder*, 557 U.S. 29, 34, 36 (2009). We are permitted to consider the presentence investigation report and any "sentencing-related material" so long as the noncitizen has been given "a fair opportunity to challenge the Government's claim." *Fan Wang v. Att'y Gen.*, 898 F.3d 341, 348–49 (3d Cir. 2018) (internal quotation marks and citation omitted).

Verma does not dispute his offense involves the requisite "fraud or deceit" under (M)(i), though he argues that a charge under it cannot be supported when the victims are not identified. But this misstates the law. As we recently explained in *Rad v. Attorney General*, 983 F.3d 651, 669 (3d Cir. 2020), the Government "can establish the loss element without specifically identifying a victim or victims; all the statutory text requires is that victims exist, and that they have collectively lost over $10,000." Here the Government clearly identified financial institutions as the victims of Verma's fraud and declined to identify them individually only because the number was so large as to make restitution impractical.

Verma next argues that the BIA improperly treated the "gain" he received from the fraud as a "loss" under (M)(i). We see no evidence the BIA improperly conflated gain and loss. Verma's November 2017 pre-sentencing report ("PSR") repeatedly stated that he was responsible for a "loss" amount of $270,000. *See, e.g.*, AR 652 ("Verma is responsible for losses totaling $270,000"). Verma was offered the opportunity to challenge the characterization of this amount as a loss, but never did so. In fact, Verma's counsel effectively conceded "the loss in question was $270,000." AR 676. Further,

3

Verma and the Government agreed on this loss amount following plea negotiations, for the Government initially charged Verma with an offense that caused losses of more than $1 million.

Even if Verma is correct that the BIA could have better explained the characterization of the $270,000 as a loss, we have no reason to doubt it reflects actual loss "particularly tethered to the convicted counts." *Rad*, 983 F.3d at 667 (internal citation and quotation marks omitted). While (M)(i) does not allow the agency "to treat gains and losses as interchangeable," we have recognized that "[i]n many cases, a defendant's earnings will provide powerful circumstantial evidence of victim loss." *Id.* at 668. The amount of Verma's fraudulent transactions relates directly to the financial institutions' injury, such that the Government easily satisfies the $10,000 loss requirement in (M)(i).

## II.

Verma requested waivers of inadmissibility under 8 U.S.C. §§ 1182(h) and (i), noting his lengthy residency and employment history, as well as the hardship his removal would pose to his U.S. citizen wife and four children. The IJ determined Verma did not merit the waivers as a matter of discretion. While acknowledging the hardships Verma's removal would pose, the IJ emphasized Verma's history of crime in the United States, including his active role in the credit card fraud. Further, Verma lied about the number of times he had been married and arrested in his 2011 naturalization application.[1] The BIA

---

[1] Verma argues he later withdrew his guilty plea for the 1983 conviction, which was vacated in part in July 2020. *See* Letter dated December 2, 2020, ECF No. 41. Even if

affirmed the IJ's conclusion that Verma did not merit the waivers despite acknowledging the "significant equities."  AR 5.  He now challenges that decision in his petition for review.

We generally lack jurisdiction to review discretionary denials of immigration relief, including the BIA's determination that an applicant does not merit a waiver of inadmissibility.  *See* 8 U.S.C. § 1252(a)(2)(B).  Our hands are further tied because Verma committed an aggravated felony.  *See* 8 U.S.C. § 1252(a)(2)(C).  He relies on *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067–68 (2020), arguing that the BIA's failure to balance positive equities against negative ones improperly applies a legal standard, thus permitting judicial review.  Verma's Op. Br. 26.  We reject this argument as an attempt to "dress up factual findings and discretionary decisions" as legal issues, for a "disagreement about weighing hardship factors is a discretionary judgment call, not a legal question."  *Hernandez-Morales v. Att'y Gen.*, 977 F.3d 247, 248–49 (3d Cir. 2020) (internal citation omitted).

\* \* \* \* \*

While we appreciate that Verma's removal may have harsh consequences for his family, he committed an aggravated felony while in the United States and we lack jurisdiction to review the agency's denial of discretionary relief.  We thus deny his

---

we could consider this evidence, which was not presented to the BIA, it does not erase that Verma lied about his criminal history in his naturalization application.  *See Berishaj v. Ashcroft*, 378 F.3d 314, 330 (3d Cir. 2004) ("[C]ourts reviewing the determination of an administrative agency must approve or reject the agency's action purely on the basis of . . . the record compiled before[] the agency itself.").

petition for review on the first issue and dismiss the petition with respect to the second issue.